THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ELLEN O'MEARA, Appellant.—Appeal by defendant from a judgment of the County Court, Nassau County, rendered April 28, 1978, convicting her of grand larceny in the third degree, upon her plea of guilty, and imposing sentence. The appeal brings up for review, *inter alia,* the denial of defendant's motion to suppress evidence seized pursuant to eavesdropping orders. Judgment reversed, on the law, motion to suppress granted, plea vacated and case remitted to the County Court for further proceedings consistent herewith. On September 9, 1976 the District Attorney obtained two eavesdropping warrants which authorized interception of conversations by electronic means over telephones located in defendant's residence and business office at the "Educational Assistance Center" in Port Washington, New York. The orders permitted the interception of communications relating to the crimes of grand larceny and conspiracy. According to the accompanying affidavits, the basis for the warrants was that defendant was engaged in a scheme involving the theft of motor vehicles and construction equipment. On September 29, 1976 the paired warrants were expanded in scope to include communications which constituted evidence of the crimes of promoting gambling and possession of gambling records. On October 12, a third order authorized interception of communications concerning gambling over two new telephones, one of which was located in the campaign headquarters of a public official for whom defendant worked. The application for the third order indicated an abandonment of the authorization to intercept calls dealing with larceny of motor vehicles. From September 18 through September 27, however, police officers overheard conversations pertaining to crimes which were not specified in the original authorizations. These conversations made it apparent that defendant was holding herself out as having the ability, in return for monetary consideration, to secure the premature release of prisoners from New York State correctional facilities. On September 18 a Mr. Di Giovanni telephoned defendant's home inquiring about the results of a relative's appearance before the Board of Parole three days earlier. Speaking in her role as aide to a public official, defendant said: "I'm sure, that, you know, we made an agreement, that he would be paroled to the Feds. Now, if he's not paroled, it's denied, call me immediately and I'll, you know, we'll have, the [public official] will have to jump in again. But I'm positive there'll be no problem." On September 20 a Dorothy Stephens telephoned defendant at her home and inquired about this same inmate who "went before the Board last week." The two women arranged a meeting to discuss the matter because, in defendant's words, "I got a lot of company on this phone, you know." Two days later, defendant telephoned Stephens to arrange a meeting at which "it" had to be delivered "in an envelope." The next day they arranged another manner of dropping off the envelope because defendant had no access to a car. On September 27 defendant telephoned Stephens from the public official's office and said, "I might be able to consummate the whole deal [and] get a guarantee to get out before Christmas". It was emphasized that the deal had to be "kept quiet" in order to protect the public official. The pair agreed to a meeting "tomorrow morning * * * that'll give both of us time to get the kind of money up." Finally, defendant said she did not want to "blow the whole thing for a lousy grand." To cover these conversations, on October 15 the District Attorney obtained an amendment to the October 12 warrant to include

communications intercepted relating to bribery. Largely based upon the information gained from these wiretaps, defendant was arrested and indicted for bribe receiving and grand larceny. She moved to suppress the wiretap evidence on the ground, *inter alia,* that the prosecution failed to obtain a warrant amendment "as soon as practicable" (see CPL 700.65, subd 4). Soon after the motion was denied, defendant pleaded guilty to one count of grand larceny in the third degree. We reverse. Once the police obtain sufficient information which manifests probable cause to believe that a crime not covered in the original warrant has been committed, it is their duty to seek an amendment of that warrant (see *People v Di Stefano,* 38 NY2d 640, 649). Such an amendment must be sought "as soon as practicable" (CPL 700.65, subd 4). In the case at bar, probable cause to believe an "uncovered" crime was being committed existed, *at the latest,* on September 27. During the conversation intercepted that day, it became evident that defendant might be engaging in the crime of bribe receiving in the second degree (see Penal Law, § 200.10). Yet, 18 days elapsed until an amendment was procured. Especially since the police overheard other, earlier conversations of an incriminating nature, this delay was unwarranted. Moreover, in the interim, the District Attorney applied for a warrant amendment on September 29 and for a separate warrant on October 12 without informing the court of the intercepted bribe-related communications. (See *United States v Tortorello,* 480 F2d 764.) Also noteworthy is the fact that the original warrants of September 9 (under which the instant communications were intercepted) were designed to secure evidence of auto theft, but no such evidence ever appeared. Where, as here, the incriminating material discovered was not described in the original warrant, it is likely that the police have undertaken a subterfuge search which has no specific purpose and which is an illegal intrusion of the right to privacy. (See Comment, 61 Cornell L Rev 92, 134.) For these reasons, we believe that the warrant amendment of October 15 was not obtained "as soon as practicable" and that the motion to suppress should have been granted. This appeal also raises the question of the denial of defendant's right to a speedy trial. Defendant was arrested on December 1, 1976 and was released on bail. The plea of guilty was entered on March 13, 1978, some 15½ months later. However, a review of the procedural sequence in this case demonstrates that most of the delay was occasioned by defendant's numerous motions to dismiss the indictment, as well as adjournments granted upon defendant's consent. Additionally, there is evidence that the prosecution was prepared to begin the trial well before the plea of guilty was entered. We conclude that there was no denial of defendant's right to a speedy trial. (See CPL 30.30.) Suozzi, J. P., Lazer, Shapiro and Cohalan, JJ., concur.