OPINION OF THE COURT
Meyer, J.
A warrant authorizing the tapping of a telephone line permits the monitoring of conversations carried on over the *111 telephone but not the monitoring of conversations carried on within the home in which the telephone is located which become audible to the monitoring officers when the telephone receiver is taken off the hook, not for the purpose of engaging in a telephone conversation but to avoid interruption by incoming calls. Nor does the wiretap warrant justify the bugging of such conversations on a “plain view” rationale, absent amendment of the warrant or obtention of a new warrant authorizing such bugging, it being clear to the monitoring officers from the nature of the system, before they hear any conversation, that a telephone communication is not in progress. Moreover, the statutory requirement that tapes be sealed under the direction of the Judge issuing the warrant “[immediately upon the expiration of the period” of the warrant (CPL 700.50, subd 2) is not satisfied when there is no explanation at all for one of the six days that elapsed between expiration of the warrant and sealing, and the People made no effort to contact the Judge on the two weekend days included in that period. Finally, the period of 15 days after arraignment within which the People are required by CPL 700.70 to furnish to defendant a copy of the warrant and accompanying application, failing which the contents of the intercepted communication or evidence derived therefrom may not be received in evidence, may be extended by the trial court only upon good cause shown.
Because the conversations sought to be introduced were outside the scope of the warrant and the statutory requirements referred to were not met, the orders of the Appellate Division affirming the conviction of each of the defendants should be reversed, the motion to suppress granted and the indictment dismissed.
I
On May 19, 1981, an eavesdropping warrant was issued by a Judge of the County Court of Albany County, authorizing the tapping of a specified telephone line running into the residence of defendant Anthony Pontore in the Town of Colonie. The supporting affidavits alleged that on May 7, 1981 and May 12, 1981, a Colonie detective had dialed the number and then listened while a confidential informant placed bets on professional basketball games with defendant Joseph Carucci, and that a second detective maintaining surveillance outside the Pontore residence had observed defendant Carucci enter the Pontore house on both occasions, on one of which he was accompanied by defendant Joseph Basilicato. .One of the affidavits also detailed the unsuccessful efforts made to secure evidence concerning Carucci’s gambling activities by surveillance, by contacting informants and by other investigative procedures.
*112 The warrant issued authorized tapping the line during the period May 25, 1981 to June 23, 1981, and, as required by CPL 700.30, directed minimization by terminating the process when it became apparent that a particular conversation was unrelated to gambling activities. As installed pursuant to the warrant, the tap allowed conversations over the specified number to be picked up on a receiver at Colonie Police Headquarters. The equipment used included a speaker on which the intercepted conversation could be monitored and an automatic recording system on which the conversation was taped. The equipment was activated whenever the telephone receiver in Pontore’s residence was taken off the hook and provided a digital display of any number dialed when an outgoing call was made.
On two occasions the equipment was activated by removal of the receiver from the hook, apparently to avoid interruption by incoming calls, for no outgoing call was made nor was any incoming call received. That no telephone conversation was in progress on these two occasions was apparent to the monitoring detectives from the absence of any digital display of a number dialed, from a recorded telephone company message stating that the receiver was off the hook, followed by a sustained beeping tone and finally by a clear line which allowed them to overhear and record a face-to-face conversation among the three codefendants. On neither occasion did the detectives terminate their monitoring and recording of the conversation, nor after the first occasion was a new warrant or an amendment of the existing warrant sought to permit bugging as well as wiretapping.
Based on the incriminating material thus recorded, the three defendants were indicted for promoting gambling in the first degree, promoting gambling in the second degree and for conspiracy in the fifth degree. All three moved to suppress the evidence derived from the wiretap on the grounds that probable cause had not been established and that minimization requirements had not been complied with. Defendants Basilicato and Carucci also sought suppression on the ground that the prosecutor had not provided them with a copy of the warrant and the application on which it was based within 15 days of arraignment as required by CPL 700.70. The prosecutor’s response to the last claim was to serve defendants 23 days after arraignment with the required papers and file an affidavit which asserted that defendants had not been prejudiced by the delay, but which offered no explanation for it.
During the ensuing hearing an additional issue was raised regarding the sealing requirement of CPL 700.50 (subd 2). The *113 warrant expired on June 23, 1981. Detective Milham testified that it took two days to complete the required paperwork (a two-page sealing order, a two-page affidavit and a document described as a “compliance order” to be affixed to the box in which the tapes were to be stored), and that on June 25 he took the tapes to the District Attorney’s office where he and the District Attorney sealed each separate container with a metal seal. The District Attorney, however, testified that Milham brought him the tapes on Friday, June 26, and the discrepancy was never explained. He agreed that he and Milham had placed each separate tape in a box which was fastened with a metal seal, a task which was completed during the early part of Friday afternoon. He testified that he then attempted to contact the Judge who had issued the warrant to obtain his approval of the sealing, calling the Judge’s chambers several times. Each time he was told by the Judge’s secretary that the Judge was on the Bench, but, although the courtroom and the District Attorney’s offices are in the same building, he made no attempt to send a note up to the Judge nor did he ask to speak with him during a trial recess. Eventually he left for an unspecified appointment, without arranging to see the Judge at the end of the day or delegating the task to an assistant. No further efforts were made over the weekend, and thus the sealing of the tapes was not judicially approved until the morning of Monday, June 29, six days after the warrant had expired.
The hearing Judge found no violation of the sealing requirement. Holding that the two-day delay until June 25 was justified “by the extensive paperwork required to be done to obtain a sealing order”, he also ruled that the District Attorney had been unable to contact the issuing Judge, “despite diligent efforts,” until June 29. No mention was made of the discrepancy regarding when the District Attorney received the tapes from Detective Milham. He also ruled that probable cause for issuance of the warrant had been shown and that because Basilicato and Carucci had not been prejudiced by the minor delay beyond 15 days in providing them with copies of the warrant and accompanying application, there was no defect in that regard. Finally, after noting that defendants had limited their lack of minimization claim to the argument that the two nontelephonic background conversations should not have been recorded, the court decided that a “logical corollary to the ‘plain view’ doctrine” required denial of the suppression motion in that respect.
Thereafter, each defendant pleaded guilty to two counts of promoting gambling in the first degree and one count of conspiracy in the fifth degree, and after sentencing, appealed to the *114 Appellate Division. That court, on essentially the same reasoning as that of the hearing Judge, affirmed in each case. Defendants appeal by leave of a Judge of this court. We conclude that suppression is required because (1) an eavesdropping warrant which authorizes interception of telephonic communication does not permit interception of a nontelephonic face-to-face conversation heard over the telephone wire when the receiver was left off the hook, (2) the sealing requirements of the statute were not met, and (3) the People failed to show any cause for their delay in serving on defendants a copy of the warrant and accompanying papers.
II
The eavesdropping warrant in this case authorized the District Attorney “to obtain by the wiretapping of the said telephone lines” conversations pertaining to specified crimes. All that it permitted, therefore, was “the intentional overhearing or recording of a telephonic * * * communication” (Penal Law, § 250.00, subd 1, made applicable to CPL art 700 by CPL 700.05, subd 1; see, also, CPL 700.05, subd 3). The interception of face-to-face conversation, which is separately defined by subdivision 2 of section 250.00 of the Penal Law as “[m]echanical overhearing of a conversation” (more commonly referred to as “bugging”),[1] was not authorized.
The specification in a warrant that it is limited to wiretapping, like the specification of the type of criminal conduct being investigated, is designed to implement the constitutional requirement that warrants contain provisions “particularly describing the place to be searched, and the persons or things to be seized” (US Const, 4th amdt; NY Const, art I, § 12; see CPL 700.30, sufods 2, 3, 4; Berger v New York, 388 US 41, 55-56; People v Floyd, 41 NY2d 245, 249). That requirement “prevents the seizure of one thing under a warrant describing another” (Marron v United States, 275 US 192,196; accord Berger v New York, 388 US 41, 58, supra; People v Baker, 23 NY2d 307, 319-322). Accordingly, the "seizure” of nontelephonic conversations pursuant to a warrant that authorizes only wiretapping clearly goes beyond the scope of the warrant and requires suppression of the resulting evidence (People v Frank, 85 AD2d 109, 112-113).
Nor can admissibility of the evidence be sustained by analogy to the “plain view” exception to the warrant requirement. *115 [2] The “plain view” doctrine permits seizure of an item not specifically referred to in the search warrant if the officer was lawfully in a position to observe the item, observation was inadvertent rather than anticipated, and the incriminating character of the items was immediately apparent (Coolidge v New Hampshire, 403 US 443, 465-471; People v Spinelli, 35 NY2d 77,80-81). For several reasons the “plain view” doctrine is inapplicable to this case. There is no “prior justification for [the] intrusion,” no “legitimate reason for being present”, when an unauthorized means of eavesdropping is employed (Coolidge v New Hampshire, 403 US, at p 466, supra). The detectives were required to terminate the interception when it became apparent that what was being heard was not a tapped telephone conversation but a face-to-face conversation bugged by defendants’ act of leaving the receiver off the hook. And while there was inadvertence on the part of defendants in converting the tap to a bug by leaving the receiver off the hook, the monitoring that followed was not inadvertently overheard by the detectives. The evidence is clear that well before any incriminating statements were overheard, the detectives were aware from the absence of a digital display, from the recorded telephone company message and from the beeping tone that no telephone conversation was in progress. At that point the detectives knew that the authorized wiretap had become an unauthorized bugging device and were obligated to terminate surveillance of the conversation, or at the very least to seek further authorization from the court. That their equipment was capable of bugging and that defendants unwittingly made bugging possible by removing the receiver from the hook did not authorize interception by bugging under a warrant authorizing only the wiretapping of telephone conversations. The nontelephonic conversations and any evidence derived from them should, therefore, have been suppressed.
*116 Ill
An additional reason for suppression of not only the face-to-face, but also of the telephonic conversations as well is the People’s failure to comply with the sealing requirement of CPL 700.50 (subd 2). That subdivision mandates that, “Immediately upon the expiration of the period of an eavesdropping warrant, the recordings of communications * * * must be made available to the issuing justice and sealed under his directions.” The requirement is designed “to prevent tampering, alterations or editing; to aid in establishing the chain of custody; and to protect the confidentiality of the tapes” (People v Nicoletti, 34 NY2d 249, 253). We have, therefore, repeatedly held that the statute must be strictly construed (id.; People v Washington, 46 NY2d 116, 122; People v Sher, 38 NY2d 600,603), and that while “sealing of tapes on the day following the termination date of a wiretap warrant is generally sufficient” (People v Edelstein, 54 NY2d 306, 310), even brief additional delays must be explained (id), and unjustified delays of only a few days will warrant suppression (see People v Weiss, 48 NY2d 988; People v Washington, 46 NY2d 116, 125, supra).
It is, moreover, not the defendant’s burden to show that the tapes have been tampered with. Rather, because the potential for such abuse is the governing factor, it is the People’s burden to offer a satisfactory explanation for any delay (People v Edelstein, 54 NY2d 306, 309, supra; People v Nicoletti, 34 NY2d 249, 253, supra). They seek to explain the six-day delay in sealing by the need to prepare the paperwork and by their inability to contact the issuing Judge.
With respect to the paperwork, we noted in People v Edelstein (supra), that generally no more than one day should be required. But even if we allow the two days to which Detective Milham testified, there remains the unexplained gap of June 25 to 26 in the handling of the tapes. There is an affirmed finding that Milham turned the tapes over to the District Attorney on Thursday, June 25, yet the District Attorney testified that he first received them during the afternoon of Friday, June 26. In light of the purpose behind the sealing requirement, the unexplained gap of a whole day in the custody of the tapes is a sufficient basis for suppression.
An additional reason for doing so exists in the failure to contact the issuing Judge until the following Monday, for there is simply no explanation for the failure to attempt to contact the Judge over the weekend. True, in People v Edelstein (54 NY2d 306, 309-310, supra) we upheld a Saturday to Monday delay *117 when there was evidence establishing that the issuing Judge was unavailable on the intervening Sunday. But the immediate sealing requirement of the statute makes no exception for weekends, and in People v Washington (46 NY2d 116,125, supra) we relied upon cases which had refused to excuse unexplained delays and which reasoned that, “ ‘Law enforcement does not cease on weekends nor holidays’ ” (People v Pecoraro, 58 AD2d 462, 470; People v Guenther, 81 Misc 2d 258, 259). There was, therefore, a failure to justify the delay in sealing, making inadmissible the contents of the intercepted communications, as well as evidence derived therefrom (People v Sher, 38 NY2d 600, 605, supra; CPLR 700.65, subd 3).
IV
Suppression is also required as to defendants Basilicato and Carucci[3] because of the prosecutor’s failure to serve them with copies of the warrant and the application on which it was based within 15 days of arraignment as required by CPL 700.70.[4]
The courts below held the delay excusable because defendants were served before the suppression hearing and, therefore, were not prejudiced. The statute, however, required a showing of both lack of prejudice and good cause for the delay. What constituted “good cause” need not be decided, for the People have offered no excuse whatsoever for the delay (cf. People v Greer, 42 NY2d 170,178-179; People v Briggs, 38 NY2d 319, 324), and the Trial Judge, therefore, had no authority to extend the 15-day period (People v Mark, 68 AD2d 315, 317-318).
The People argue, nevertheless, that by analogy to CPL 710.30, Basilicato and Carucci, having moved for suppression, should be held to have waived timely notice. CPL 710.30, which concerns notice within 15 days of arraignment of statement or identification evidence that the People intend to offer at trial, provides in its subdivision 3 that even though the required notice not be given the evidence will be admissible if defendant moves to suppress and the motion is denied. The flaw in the *118 argument is, of course, that CPL 700.70 contains no similar provision. It may well be, as the People argue, that the notice requirements of CPL 700.70 and CPL 710.30 serve the same purpose of alerting criminal defendants to the existence of evidence that could be introduced against them at trial so that a timely decision may be made about whether to file a motion t o suppress such evidence (see CPL 255.20, subd 1; Bellacosa, Supplementary Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 700.70, 1983-1984 Pocket Part, p 201). That does not, however, warrant altering the plain language of CPL 700.70 by reading into the statute an exception not provided by the Legislature (People v Graham, 55 NY2d 144). Furthermore, it would make no sense to hold a violation of the section waived by the making of a motion to suppress, for such a motion can be based not only on constitutional violations but also on any ground “precluding admissibility thereof in a criminal action” (CPL 710.20, subd 2). Thus, a violation of CPL 700.70, itself a ground for suppression, would be held waived by the very act of moving to suppress. The motion by Basilicato and Carucci should have been granted on this ground as well.
V
Because the record establishes that all counts of the indictment are based on eavesdropping evidence alone and that evidence must be suppressed as to all three defendants, the indictment should be dismissed (see People v Grant, 45 NY2d 366, 377). It is not necessary, therefore, to discuss the other issues raised by defendants.
Accordingly, the orders of the Appellate Division should be reversed, the motions to suppress granted, and the indictment dismissed as to all three defendants.
Chief Judge Cooke and Judges Jasen, Jones, Wachtlee, Simons and Kaye concur.
In each case: Order reversed, etc.

. A similar distinction is drawn in the applicable Federal statutes between the interception of “wire communications” and “oral communications” (18 USC § 2510, subds [1], [2]).

. One application of “plain view” has, indeed, been codified in GPL 700.65 (subd 4), which permits retroactive amendment of an eavesdropping warrant as the basis for admission at trial of an intercepted communication “which constitutes evidence of any crime” but “which was not otherwise sought” under the terms of the original warrant. The subdivision is generally construed to permit amendment as to an interception over an authorized medium of a conversation about a different crime than that named in the warrant application (People v Di Stefano, 38 NY2d 640, 651; People v Gnozzo, 31 NY2d 134, 143-144), but Gnozzo suggests (“and perhaps on other circumstances,” 31 NY2d, at p 143) that it may not be limited to the different crime situation. We need not now decide whether it can be applied to the interception of a conversation — even one about the same crime — by means of an unauthorized medium, i.e., by bugging instead of wiretapping, for here no request was made for amendment pursuant to GPL 700.65 (subd 4), nor was a new warrant authorizing bugging as distinct from wiretapping sought.

. Defendant Pontore raises the same issue before us but failed to preserve it by appropriate motion before the trial court.

. That section provides: “The contents of any intercepted communication, or evidence derived therefrom, may not be received in evidence or otherwise disclosed upon a trial of a defendant unless the people, within fifteen days after arraignment and before the commencement of the trial, furnish the defendant with a copy of the eavesdropping warrant, and accompanying application, under which interception was authorized or approved. This fifteen day period may be extended by the trial court upon good cause shown if it finds that the defendant will not be prejudiced by the delay in receiving such papers.”