OPINION OF THE COURT
Alexander, J.
On this appeal, we are called upon to determine whether the People have complied with the mandates of CPL article 700 in their conduct of a wiretap investigation. For the reasons that follow, we conclude that the People have failed to satisfy various statutory requirements and accordingly, the order of the Appellate Division affirming defendant’s conviction must be reversed and a new trial ordered.
I
Defendant and her husband, who operated a furrier business in Manhattan, were suspected of conducting a fencing operation from their place of business. A police investigation ensued, in which numerous wiretaps and other surveillance techniques were utilized. An informant of demonstrated reliability passed ostensibly stolen fur pelts to an intermediary who, under police surveillance, apparently sold the pelts to the Winograds. This intermediary subsequently identified the Winograds as his fence, but refused to cooperate with the police any further.
The police, aware that the Winograds had previously been convicted of extortion, criminal usury and related crimes, sought and obtained permission from the landlord of the *388 building where the Winograds maintained their place of business to install a video camera in the hallway opposite the doorway to defendant’s establishment. For six weeks, police officers were able to observe the hallway area in front of the door and the immediate interior when the door was opened but were not able to overhear any conversations. Although the police observed people visiting the Winograds, some carrying fur pelts and some apparently delivering money to the Wino-grads, this investigative technique was considered inadequate to gather sufficient evidence for a successful prosecution.
On July 12, 1983, the New York County District Attorney, using information obtained from informants and the video surveillance, applied for and was issued an eavesdropping warrant authorizing interception of conversations inside the Winograd’s place of business and in the hallway outside the place of business, concerning criminal possession of stolen property and conspiracy to commit that crime (wiretap No. 1). Even though the affidavit submitted in support of the warrant recited that an informant had exchanged fur pelts as collateral against a usurious loan transacted with the Winograds, the People did not seek authorization to intercept conversations relating to criminal usury. However, shortly after the wiretap was in place, the police intercepted conversations concerning usurious loans on July 14, 15, 18, 19, 20, 21, 22 and 29. Thereafter, on August 1, 1983, the District Attorney applied for an amendment to the eavesdropping warrant to preserve the conversations relating to criminal usury intercepted on July 14, 15, 18, 19 and 21. No effort was made at this time, however, to amend the warrant to permit prospective interception of conversations concerning usurious loans. One week later, however, on August 8, 1983, the District Attorney sought a further amendment to both preserve the conversations relating to criminal usury intercepted on July 20, 22 and 29 and to permit prospective interception of conversations regarding criminal usury.
On August 11, the warrant issued on July 12 and amended August 1 and August 8 was extended for 30 days (wiretap No. 2). On September 7, two days prior to the expiration of the warrant, the supervising Justice, who had been designated by the issuing Justice then on vacation to supervise execution of the warrant, informed the People that he would be unavailable for all purposes until September 12, due to religious observance. Thus, the tapes of the seized conversations authorized by the August 11 extension (wiretap No. 2) were not *389 presented to a Justice for sealing until September 12 and in fact, were not sealed until September 13.
On August 26, the People obtained a warrant authorizing interception of conversations over the Winograd’s business telephone relating to the crimes of criminal possession of stolen property, criminal usury and conspiracy to commit those crimes (wiretap No. 3). This warrant expired on Saturday, September 24, and the tapes were sealed on the following Monday, September 26.
The investigation continued throughout the fall. A new eavesdropping warrant was issued on September 12 and extended for an additional 30 days on October 11, and search warrants were issued on September 16 and October 29, based in part on information obtained through the July 12 eavesdropping warrant and the September 12 eavesdropping warrant as extended on October 11.
In October 1983, the Winograds[1] were arrested and indicted for 51 counts of criminal usury (Penal Law § 190.42) and 16 counts of criminal possession of stolen property (Penal Law § 165.45). After defendant’s suppression motion was denied without a hearing (125 Misc 2d 754), she was convicted after a trial by jury of 45 counts of criminal usury and 11 counts of criminal possession of stolen property. Defendant was thereafter sentenced to concurrent indeterminate prison terms of 2 to 6 years on each usury count and 1 to 3 years on the stolen property counts and ordered to pay restitution in the amount of $42,950 on the usury counts and $1,955 on the stolen property counts as well as $43,000 in fines on the usury counts. On appeal from the judgment of conviction, which brought up for review the denial of defendant’s motion to suppress the evidence derived from the eavesdropping warrants, the Appellate Division affirmed (114 AD2d 315). The defendant has appealed by leave of a Judge of this court.
II
Defendant’s initial[2] argument that criminal usury is not *390 a crime "dangerous to life, limb, or property” within the reach of the Omnibus Crime Control and Safe Streets Act of 1968 (18 USC § 2516 [2]), the Federal legislation which authorizes States to issue eavesdropping warrants, is patently meritless and requires no extended discussion. We only recently noted in People v Principe (65 NY2d 33, 38), that "it is logical to conclude that in the use of the singular in the 'catch-all’ phrase 'or other crime dangerous to life, limb, or property’ * * * Congress intended the word 'crime’ to be construed generically and did not seek to unreasonably limit the power of a State Legislature to enact enabling legislation”. In Principe, the record demonstrated the presence of an established and pervasive criminal operation involving the corrupt activities of public employees. Relying on our previous decision in People v Shapiro (50 NY2d 747, 764), we said that such an operation portrayed a well-organized criminal enterprise representing major offenses that are " ' "intrinsically serious or * * * [are] characteristic of the operations of organized crime” ’ ” (People v Principe, supra, at p 38, quoting People v Shapiro, supra, at p 764, quoting Sen Rep No. 1097, 90th Cong, 2d Sess, 1968 US Code Cong & Admin News, at 2234), and concluded that court-ordered eavesdropping for evidence of forgery, larceny and related crimes was within the scope of the Federal eavesdropping authorization. So too here, where the defendant is accused of operating a well-organized criminal enterprise engaged in fencing furs and loansharking, intrinsically serious offenses characteristic of the operations of organized crime, we conclude that the designated offense of criminal usury (CPL 700.05 [8] [e]) is within the reach of the Federal enabling legislation sufficient to authorize the eavesdropping warrants (People v Principe, 65 NY2d 33, supra; cf. People v Shapiro, 50 NY2d 747, supra).
 Defendant argues further that because the amendments to the warrant authorizing wiretap No. 1 seeking to preserve the previously intercepted conversations relating to criminal usury were not sought "as soon as practicable” (CPL 700.65 [4]) and. because the People failed "[immediately upon the expiration of the period of [the] eavesdropping warrant” to seal the tapes obtained from wiretaps No. 2 and No. 3 (CPL 700.50 [2]), the evidence deriving from those wiretaps should have been suppressed. We agree.
We have consistently emphasized that there must be strict compliance with the provisions of New York’s eavesdropping statute (CPL art 700) and that the burden of establishing such *391 compliance rests with the prosecution (People v Schulz, 67 NY2d 144, 148-149; People v Gallina, 66 NY2d 52, 57; People v Basilicato, 64 NY2d 103; People v Washington, 46 NY2d 116, 121-122; People v Sher, 38 NY2d 600, 603-605). Moreover, " '[I]n the absence of compliance, the State officials lack authority to wiretap, and any interceptions they make are unlawful, and any evidence derived from the wiretap is inadmissible’ ” (People v Schulz, 67 NY2d 144, 149, supra, quoting People v Sher, 38 NY2d 600, 604, supra).
The initial eavesdropping warrant, issued on July 12 (wiretap No. 1), authorized the interception of conversations concerning criminal possession of stolen property and conspiracy to commit that crime. However, as early as July 14, conversations were intercepted which concerned usurious loans, a crime not included in the initial eavesdropping authorization. CPL 700.65 (4), as pertinent, provides: "When a law enforcement officer, while engaged in intercepting communications in the manner authorized by this article, intercepts a communication which was not otherwise sought and which constitutes evidence of any crime that has been, is being or is about to be committed, the contents of such communications, and evidence derived therefrom, may be disclosed or used as provided in subdivisions one and two. Such contents and any evidence derived therefrom may be used under subdivision three when a justice amends the eavesdropping warrant to include such contents. The application for such amendment must be made by the applicant as soon as practicable. If the justice finds that such contents were otherwise intercepted in accordance with the provisions of this article, he may grant the application” (emphasis added).
In People v Di Stefano (38 NY2d 640), we interpreted this provision as engrafting the "plain view” exception on the general constitutional requirement that seized evidence be particularly described in the application to intercept communications (id., at p 648). We noted that the "plain view” exception requires an inadvertent discovery and that this requirement is intended to protect citizens against anticipated discoveries by officers who have probable cause to know the existence and location of tangible evidence (id., at p 649). We further noted that the New York statute was based on a similar Federal provision (see, 18 USC § 2517 [5]) which was "adopted to insure that the original order was lawfully obtained and continued, that the inadvertent interception was overheard in good faith, and that the interception was in fact *392 inadvertent” (38 NY2d, at p 650, citing 1968 US Code Cong & Admin News, at 2189, quoting Sen Rep No. 1097, 90th Cong, 2d Sess, at 12 [1968]). Consequently, we held in Di Stefano that where there has been a claimed inadvertent interception, a "retroactive amendment is required to insure continuous good faith compliance with the original warrant and not to circumscribe the trial use of properly, though accidentally, overheard incriminating conversations” (id.).
As emphasized above however, CPL 700.65 (4) requires that the amendment to a warrant to authorize interceptions relating to crimes inadvertently discovered must be sought "as soon as practicable”. In People v O’Meara (70 AD2d 890, affd for reasons stated below 52 NY2d 990, 991), we held that the police must seek an amendment of the original warrant as soon as practicable after they have obtained "sufficient information which manifests probable cause to believe that a crime not covered in the original warrant has been committed” (70 AD2d, at p 891). Thus, in order to determine whether these intercepted communications relating to the crime of usury should be suppressed, it is necessary to determine when probable cause in respect to that crime first existed, and whether the police sought an amendment as soon as practicable thereafter.[3]
On this record it is clear, as the suppression court found,[4] that the police had probable cause to believe that the Winograds were engaging in criminal usury by July 14, 1983. At that point, the police knew that both Winograds had *393 previously been convicted of criminal usury, that an informant had claimed to have given furs to the Winograds as collateral on usurious loans, and that there had been conversations intercepted between the Winograds which, as the police would later describe in an affidavit seeking preservation of the conversations, made it apparent "that the Winograds [were] together running a business of making and collecting usurious loans”.
Despite the existence on July 14 of probable cause to believe that the Winograds were committing criminal usury, the People did not seek to amend the warrant to preserve the interception of conversations relating to criminal usury until August 1, a delay of 18 days. As a matter of law, such a delay under these circumstances violates the requirement of CPL 700.65 (4) that an amendment be sought "as soon as practicable”. Although such a determination necessarily involves consideration of the facts and circumstances of each case, here, where further conversations relating to the unanticipated criminal conduct were continually intercepted, and the People fail to proffer any reason sufficient to justify the lengthy delay or to demonstrate that an earlier application would not have been practicable (People v O’Meara, supra) the conclusion that the People have failed to comply with the requirements of the statute is compelled.[5] Accordingly, the communications relating to criminal usury intercepted prior to the prospective order authorizing such interceptions, and any evidence derived therefrom, should have been suppressed.[6]
In regard to wiretaps No. 2 and No. 3, defendant claims that the sealing requirements of CPL 700.50 (2)[7] were not met. *394 It is well established that the sealing requirement of the statute must be strictly construed to effectuate the purposes of preventing tampering, alterations or editing of the tapes, aiding in establishing a chain of custody and protecting the confidentiality of the tapes (People v Gallina, 66 NY2d 52, 59, supra; People v Basilicato, 64 NY2d 103, 116, supra; People v Nicoletti, 34 NY2d 249, 253). Although we have upheld a one-day delay in sealing (People v Edelstein, 54 NY2d 306, 310, rearg denied 55 NY2d 878), the general rule is that any delay, if not satisfactorily explained, requires suppression (People v Gallina, supra; People v Basilicato, supra; People v Weiss, 48 NY2d 988; People v Washington, 46 NY2d 116, 125). Moreover, when there has been a delay, a defendant is not required to prove that the tapes were in fact tampered with; rather, it is the People’s burden to offer a satisfactory explanation for the delay (People v Gallina, supra; People v Basilicato, supra).
Here, the eavesdropping warrant authorizing wiretap No. 2 was issued on August 11 and expired on September 9[8] but was not presented to a Justice for sealing until September 12 and not sealed until September 13. The People offer as an explanation and excuse for the delay the fact that the supervising Justice was unavailable due to religious observance. However, the People offer no explanation for their failure to have the supervising Justice transfer authority to an available Justice despite the fact that the supervising Justice had informed them of his anticipated unavailability two days prior to the expiration date. Moreover, it clearly appears that at other times during the investigation the People succeeded in having authority for supervision of the wiretaps transferred from one Justice to another. As we said in People v Gallina (66 NY2d 52, 60, supra), neither "[inadequate police procedures” nor "unavailability of the issuing justice * * * in a county where several justices are present each business day” constitutes a valid excuse for the failure to timely seal tapes. There having been an unjustified delay in sealing, the intercepted communications contained on wiretap No. 2 as well as *395 any evidence derived therefrom are inadmissible and should have been suppressed.
The eavesdropping warrant authorizing wiretap No. 3 expired on September 24, a Saturday and was not sealed until the following Monday, September 26. Here too, the People offer no excuse for this delay but argue that a Saturday to Monday delay satisfies the statute, relying on People v Edelstein (54 NY2d 306, 309-310, supra), where we upheld a Saturday to Monday delay when there was evidence establishing that the issuing Judge was unavailable on the intervening Sunday. More recently, however, in People v Basilicato (64 NY2d 103, 117, supra), we noted that "the immediate sealing requirement of the statute makes no exception for weekends” reasoning that " ' "[l]aw enforcement does not cease on weekends nor holidays” ’ ” (quoting People v Pecoraro, 58 AD2d 462, 470; People v Guenther, 81 Misc 2d 258, 259). Thus, as in Basilicato (supra), where no excuse is offered for the failure to contact the issuing Justice over the weekend, the delay caused solely by an intervening weekend is not a satisfactory explanation for noncompliance with CPL 770.50 (2) and particularly so, in view of the fact that the People have exclusive control over the determination of the expiration date of the warrant. The intercepted communications in wiretap No. 3, as well as evidence derived therefrom, were thereby rendered inadmissible and should have been suppressed.
In sum, the motion of defendant should be granted to the extent of suppressing the communications relating to criminal usury intercepted prior to the August 8 order authorizing prospective interception of conversations relating to that crime, all conversations intercepted pursuant to wiretaps No. 2 and No. 3 and all evidence derived from this suppressed evidence. We cannot determine on this record, however, to what extent, if any, subsequent wiretap authorizations or search warrants derive from the suppressed evidence and are therefore suppressible themselves. That determination should be made by the trial court on remittitur.
Ill
Finally, defendant argues that the restitution ordered by the trial court pursuant to Penal Law § 60.27 on the criminal usury convictions was excessive. Penal Law § 60.27 (2) requires the court to "make a finding as to the fruits of the offense” and to "conduct a hearing upon the issue [upon *396 request by the defendant]” (see, People v Sommer, 105 AD2d 1052, 1053). Here, no such hearing was held despite defendant’s request nor were the required findings made by the trial court. Thus, we are unable to determine on this record whether or not the restitution ordered by the trial court was excessive. Should there be a conviction upon retrial and restitution ordered, the record should reflect the trial court’s findings (Penal Law § 60.27 [2]).
IV
Based upon the foregoing, the order of the Appellate Division should be reversed, the judgment of conviction vacated, the motion to suppress granted in accordance herewith and the case remitted to Supreme Court, New York County, for a new trial after a determination as to what evidence, if any, was derived from the evidence ordered suppressed herein and is therefore inadmissible.
Chief Judge Wachtler and Judges Meyer, Simons, Titone and Hancock, Jr., concur; Judge Kaye taking no part.
Order reversed, etc.

. Defendant and her husband were arrested and indicted. The case against defendant’s husband was severed because he was too ill to stand trial. He died in February 1986.

. Defendant’s claim that the video camera surveillance of the hallway and interior of the premises without a warrant was an illegal search is without merit inasmuch as there are affirmed findings of fact that the landlord shared a common right of control to the property and consented to the surveillance (see, People v Cosme, 48 NY2d 286, 290, 292).

. The People argue that prior to seeking an amendment of the warrant to preserve conversations relating to an unanticipated crime, the prosecution must not only have probable cause to believe the defendant was committing such crime but must also meet all the requirements for the issuance of an eavesdropping warrant (see, CPL 700.15) including a determination that normal investigative procedures had failed or would be unlikely to succeed (CPL 700.15 [4]). The People’s argument fails to distinguish the requirements for an order prospectively authorizing the interception of communications relating to a crime not originally authorized, which must satisfy all the requirements for the issuance of an eavesdropping warrant (CPL 700.15, 700.20) and an order amending a warrant to preserve conversations already intercepted, albeit inadvertently. In regard to the latter, CPL 700.65 (4) plainly requires the application for the amendment to be made "as soon as practicable” after it is determined that the inadvertently intercepted communication relates to a crime not covered in the original warrant. The likelihood of success of other investigative procedures is irrelevant to this latter determination.

. That portion of the suppression court’s opinion in which this issue is discussed was edited out of the published version.

. A second amendment to the eavesdropping warrant issued on July 12 to preserve conversations relating to criminal usury intercepted on July 20, 22 and 29 was made on August 8, 25 days after probable cause was established. Because we conclude that the 18-day delay in seeking the initial amendment failed of compliance with the statutory mandate it necessarily follows that the 25-day delay likewise fails. We would note that no issues concerning the propriety of the portion of the August 8 order authorizing prospective interception of conversations relating to criminal usury have been raised in this court.

. In light of our determination that the amendments to the eavesdropping warrant issued on July 12 preserving the interception of conversations relating to criminal usury were not sought "as soon as practicable” as required by CPL 700.65 (4), we need not and do not reach defendant’s alternative argument that these conversations were not inadvertently intercepted in that they should have been anticipated.

. CPL 700.50 (2) provides: "Immediately upon the expiration of the *394 period of an eavesdropping warrant, the recordings of communication made pursuant to subdivision three of section 700.35 must be made available to the issuing justice and sealed under his directions.”

. Although the terms of the warrant indicate that it expired on September 10, an eavesdropping warrant cannot authorize interception for a period of time exceeding 30 days (CPL 700.10 [2]). Thus, the warrant expired as a matter of law on September 9, 30 days after its issuance.