*855 OPINION OF THE COURT
Donald J. Mark, J.
The defendants, who are charged with the crimes of possession of gambling records, first degree, and promoting gambling, second degree, have made this application pursuant to CPL 710.20 (1) to suppress evidence seized as the result of a search warrant upon the ground that there was a lack of probable cause for its issuance.
This lack is predicated upon a claim that part of the information upon which the search warrant was based emanated from a conversation inadvertently intercepted during the execution of an eavesdropping warrant.[1] This latter warrant involved another suspect and another charge, but this information is claimed to be tainted because the police failed to obtain an amendment upon the discovery of the defendants’ gambling activity.
The facts in this case are not in dispute.
On September 15, 1986, a County Court Judge authorized an eavesdropping warrant for the seizure of telephone communications of a certain individual at his residence to obtain evidence of drug trafficking. The police on the same day intercepted three telephone conversations between that individual and the defendants which indicated that the defendants were engaged in gambling operations. These telephone calls and other calls of a similar nature were minimized because they did not pertain to the offense designated in the said warrant. The same County Court Judge on September 20, 1986 refused to amend the wiretap order at the request of the police to include the crime of gambling, finding that there was insufficient probable cause to justify the same. On January 11, 1987 after the completion of the narcotics investigation, the police obtained a search warrant for the defendants’ residence which was based in part upon the unanticipated conversation involving gambling. The defendants now seek to suppress the evidence of gambling confiscated by virtue of such warrant.
The applicable statute is CPL 700.65 (4) which provides as follows: "When a law enforcement officer, while engaged in intercepting communications * * * intercepts a communication which is not otherwise sought and which constitutes evidence of any crime * * * the contents of such communica *856 tions, and evidence derived therefrom, may be disclosed or used as provided in subdivisions one and two. Such contents and any evidence derived therefrom may be used under subdivision three when a justice amends the eavesdropping warrant to include such contents. The application for such amendment must be made by the applicant as soon as practicable.”
Subdivision (1) authorizes the disclosure of such information by the police officer obtaining the same to another officer for his use. Subdivision (2) provides as follows: "Any law enforcement officer who, by any means authorized by this article, has obtained knowledge of the contents of any intercepted communication, or evidence derived therefrom, may use such contents to the extent such use is appropriate to the proper performance of his official duties.” Subdivision (3) provides as follows "Any person who has received * * * any information concerning a communication, or evidence derived therefrom * * * may disclose the contents of that communication or such derivative evidence while giving testimony under oath in any criminal proceeding”.
A literal reading of subdivision (4) seemingly disposes of the defendant’s argument.
Subdivision (2) permits a police officer to use material not covered by the wiretap order; subdivision (3) authorizes an officer to testify to such information in a criminal proceeding. Subdivision (4) requires an amendment of the eavesdropping warrant in order for subdivision (3) to be invoked. That subdivision places no such restriction on the employment of subdivision (2). The legal maxim "expressio unius est exclusio alterius, ” which means that where a law expressly describes a particular act to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted and excluded (McKinney’s Cons Laws of NY, Book 1, Statutes § 240; People v Lewis, 29 NY2d 923; People v Ifill, 127 Misc 678; People v Bouton, 71 Misc 2d 1095) then becomes relevant. Applied to this statute, the lack of a requirement of an amendment for the invocation of subdivision (2) indicates that the use of the unanticipated information is allowed sans any amendment, and the amendment is necessary only if the officer testifies to the overheard conversation pursuant to subdivision (3).[2]
*857 Hence, under subdivision (2), the reliance upon this information as the partial basis for the search warrant is permissible.
Although the logic of this conclusion would appear to be obvious, it somewhat evaporates in the light of People v Winograd (68 NY2d 383). In that case the police were issued an eavesdropping warrant on July 12, 1983, to investigate a fencing operation, and on July 14, 1983, during the course of its execution learned that the defendants were committing criminal usury. Despite this knowledge the police delayed seeking the first amendment until August 1, 1983, a period of 18 days, and the second amendment until August 8, 1983, a period of 25 days. The police applied for and received two more wiretap orders relating to the crimes of criminal possession of stolen property, criminal usury and conspiracy to commit those crimes on August 26, 1983, and September 12, 1983, and two search warrants were subsequently issued based upon the July 12 and September 12 eavesdropping warrants. The Court of Appeals held that as a matter of law the delays of 18 and 25 days violated CPL 700.65 (4) in that the amendments were not applied for "as soon as practicable,” suppressed the communications pertaining to criminal usury intercepted prior to August 26, 1983, "and any evidence derived therefrom,”[3] and reversed the conviction. Since that court was unable to determine if the search warrants were derived from the suppressed evidence, it remitted that particular matter to the trial court.
However, Winograd (supra) is probably not controlling for two reasons.
The primary reason is the terminology in that case to the effect that the amendment is required only when the police have probable cause to believe the unanticipated crime is being or was committed as follows: "the police must seek an amendment * * * after they have obtained 'sufficient information which manifests probable cause’ * * * Thus, in order to determine whether these intercepted communications * * * should be suppressed, it is necessary to determine when probable cause in respect to that crime first existed * * * On this record it is clear * * * that the police had probable cause to believe that the Winograds were engaging in criminal usury by July 14, 1983 * * * Despite the existence on July 14 *858 of probable cause * * * the People did not seek to amend the warrant” (68 NY2d, at 392, 393, supra [emphasis added]).
The seminal case of People v Di Stefano (38 NY2d 640, 649) contains the following language which reinforces this proposition: "While it may be true that after April 6 the authorities knew of defendant and even may have entertained questionable suspicions as to his plans, nevertheless, on the basis of the April 6 conversation alone, the authorities lacked probable cause to seek amendment of the warrant to include either the crimes of robbery or conspiracy to rob, or to even name the defendant or his cohort” (emphasis added).
In this case, on September 20, 1986, the County Court Judge rejected the application of the police to amend the wiretap order to include gambling, because there was insufficient probable cause to find the commission of that crime. This judicial finding constitutes the law of the case (People v Ferguson, 114 AD2d 226; People v Finley, 104 AD2d 450, adhered to 107 AD2d 709; People v Hartigan, 90 AD2d 506; People v Watson, 57 AD2d 143, revd on other grounds 45 NY2d 867). Therefore, due to the lack of probable cause regarding the crime of gambling, the police were not obligated to apply for the amendment, and their application was surplusage and a nullity (see, People v Lathrop, 127 AD2d 1003). As a consequence the mandate of CPL 700.65 (4) that the application for such amendment must be made as soon as practicable was not violated.
The secondary reason is that Winograd (supra) did not discuss the three pertinent subdivisions of CPL 700.65; it only referred to subdivision (4). The issue of the distinction between subdivision (2) and subdivision (3), as considered in subdivision (4), was not raised on the appeal,[4] nor was any reference made thereto in that opinion. In interpreting a holding of the Court of Appeals, a court must be guided by the general principle that the language used therein " 'must be read in context and in the light of the issues presented’ ” (People v Jones, 105 AD2d 179, 183, affd 66 NY2d 529). Thus, that case is distinguishable, and this issue can be viewed as unresolved at the appellate level.
Without a violation of subdivision (4), there are left conversations concerning the crime of gambling which were accidentally overheard. The "plain view” doctrine then comes into *859 play, and it permits seizure of an item not specifically referred to in the eavesdropping warrant if the officer was lawfully in the position to observe the item, observation was inadvertent rather than anticipated, and the incriminating character of the items was immediately apparent (People v Basilicato, 64 NY2d 103; People v Spinelli, 35 NY2d 77). As a result pursuant to subdivision (2), there can be no objection to the use of those conversations as a partial basis for the search warrant that was issued for the defendant’s residence.[5]
Accordingly, the application to suppress the evidence derived from the execution of the search warrant is denied.

. Both sides apparently concede that the search warrant is valid if this information was legally procured and invalid if it was not.

. The responding documents of the People assert that the overheard conversation will not be used testimonially.

. The defendants rely upon this language as the basis for their argument to invalidate the search warrant.

. The record on appeal demonstrates that the briefs of the parties did not address this problem.

. Although the People’s response indicated that these conversations would not be testified to, they would seem to be admissible under subdivision (3) without the interaction of subdivision (4).