THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ROLF RONNING, HARRY OLESEN, ORVILLE PENROSE, FORTUNE MACRI, THOMAS CORRIGAN, HAROLD FULGENZI, MICHAEL FULGENZI and KEVIN VERPENT, Respondents.

Third Department, April 28, 1988

### APPEARANCES OF COUNSEL

*Ronald Goldstock, Deputy Attorney-General in Charge, Organized Crime Task Force (Steven Chananie* and *Arthur Weinstein* of counsel), for appellant.

*LaRossa, Mitchell & Ross (John M. Mitchell* of counsel), for Orville Penrose, respondent.

### OPINION OF THE COURT

MAHONEY, P. J.

In November 1986 defendants were indicted and charged, in various combinations, with possession and sale of controlled substances, attempt to commit the same and conspiracy, based on evidence that they were part of a drug distribution ring. A crucial portion of that evidence was obtained by virtue of an electronic surveillance warrant. Defendants moved to suppress

such evidence, and that motion was granted. The People appeal.

In November 1983 Arthur Lamb, Jr., was arrested at the New York border after attempting to enter the United States from Canada while in possession of four kilograms of cocaine. Lamb agreed to cooperate with Federal Drug Enforcement Agency officials and dealt, in particular, with Special Agent Robert Sears. As part of the investigation, Lamb made tape-recorded telephone calls to two men, Robert Barth and Francesco Greco, who had allegedly supplied Lamb with cocaine to transport across the border. Barth and Greco were arrested and charged by Canadian officials with conspiracy to export cocaine. The recordings of the telephone calls were suppressed by a Canadian court. Though nothing in the record documents the reason for the suppression, Special Agent Sears averred that a Canadian police official informed him that the recordings were suppressed "because the Canadian Crown prosecutor made an error under Canadian law when seeking to introduce them into evidence". Both Lamb and Special Agent Sears testified at the January 1984 trial on the Canadian charges but Barth and Greco were acquitted on February 6, 1984, specifically on the ground that the Canadian court found Lamb's testimony to be unworthy of belief. Special Agent Sears asserted that he was informed by a Canadian police official that, without the corroborating effect of the suppressed recordings, the Canadian court was unwilling to credit Lamb's testimony over that of the two men charged. After the acquittal, a Federal investigation and prosecution of Barth and Greco was commenced, which culminated in their pleading guilty to narcotics offenses in their dealings with Lamb.

In January 1984, based in part on information supplied by Lamb, Federal authorities commenced an investigation into alleged narcotics trafficking by Harry Olesen, one of the defendants herein. In February 1984 the State Police became involved in the investigation, and in April 1984 the State Organized Crime Task Force (hereinafter the Task Force), the prosecutor herein, joined in. In May 1984 the Task Force applied to Justice T. Paul Kane of this court for an eavesdropping warrant authorizing a wiretap on the telephone of Olesen's live-in girlfriend. The application was supported by three affidavits. The warrant was issued on May 24, 1984, and expired by its terms on June 22, 1984. On that date Justice Kane issued an order extending the warrant until July 22, 1984, and several further extensions were ordered.

Defendants contended, and County Court agreed, that the omission of certain information in the application for the eavesdropping warrant undermined the finding of probable cause, rendering the warrant defective and the conversations recorded pursuant thereto inadmissible. Further, County Court found that the People failed to properly obtain sealing of the recordings as required by statute.

Dealing with the first issue, defendants' position is that the People's failure to advise Justice Kane of the acquittal of Barth and Greco on the Canadian charges and the determination of the Canadian court that Lamb's testimony was unworthy of belief vitiates the finding of probable cause. Defendants also claim that a false statement was made in one affidavit. Where an affidavit submitted on a warrant application contains a false statement which was made knowingly or with reckless disregard for the truth and which is necessary to the finding of probable cause, the warrant will be voided and the fruits of the search suppressed if the remainder of the affidavit is insufficient to establish probable cause (see, Franks v Delaware, 438 US 154, 155-156). The warrant application at issue herein was supported by affidavits of State Police Investigator Ralph Marshall, Ronald Goldstock, the Deputy Attorney-General in charge of the Task Force, and Assistant Deputy Attorney-General Terrence Kelly. Marshall's affidavit stated that he had been investigating a cocaine distribution syndicate in Albany, Saratoga and Warren Counties for approximately seven months. The People appear to concede that Marshall actually became involved in the investigation in April 1984, such that he was only involved for approximately two months. Even assuming this to be a knowingly made false statement, it is hardly necessary to the finding of probable cause. Thus, it does not void the warrant. More significant is the failure of the applicant to apprise Justice Kane of the decision of the Canadian court.

Initially, the People contend that Marshall, Goldstock and Kelly were not aware of the acquittal. County Court imputed the knowledge of Special Agent Sears to the State law enforcement authorities using the same analysis by which police agencies are charged with knowledge that a defendant is represented by an attorney where a charge in a different jurisdiction is pending (see, People v Bertolo, 65 NY2d 111, 117-121). While we agree that, on the facts of this case, the knowledge of Special Agent Sears should be imputed to the State law enforcement officials, we decline to set forth any

broad holding that police officers who are using an informant's information to support a warrant application are under an obligation to inquire into the disposition of other criminal charges regarding which the informant has provided information. It is sufficient to hold that, in this case, based upon the close cooperation of the Federal agents and State law enforcement officers and the parallel tracks of their investigations, the knowledge of the decision of the Canadian court should be imputed.

■ However, we disagree with County Court that the failure of the People to advise Justice Kane of the outcome of the Canadian prosecution vitiates the warrant. We are not dealing with a false statement, but an omission. Further, the relevance of the Canadian court's decision in assessing the reliability of Lamb's information is questionable at best. The Canadian court refused to credit Lamb's testimony over that of Barth and Greco. However, in so doing it did not have the benefit of the recordings which had been suppressed and which would have tended to corroborate Lamb's testimony. Thus, we are not dealing with a situation where, after considering all of the evidence, Lamb had been found to be untruthful. Moreover, after the Canadian acquittal, Federal authorities used Lamb's information to obtain convictions of both Barth and Greco in Federal court. Thus, the decision of the Canadian court is less a reflection on the reliability of Lamb's information than on the assessment of that information without the benefit of the corroborative recordings.

Further, the information which the Canadian court found not to be reliable concerned Barth and Greco and was not the basis for probable cause in this case. In assessing the value of an informant's statements to establish probable cause, the reliability of the informant is crucial *(People v Johnson,* 66 NY2d 398, 402-403). Certainly, it would have been more appropriate for the People to have advised Justice Kane of the acquittal in the Canadian court. However, the omission of such information does not cast such a doubt on Lamb's reliability as to void the warrant. An informant's reliability may be demonstrated, not only by his track record as a supplier of information, but by police investigation which corroborates details of his statement *(supra,* at 403). Marshall averred that he had personally listened to tapes of the calls between Lamb and Barth and Greco, the very same tapes which were not considered by the Canadian court. Also, Lamb's information of who was dealing in the cocaine distribution ring and the

places of such dealing was corroborated by records of the telephone numbers called from Olesen's residence and personal surveillance of the individuals and places indicated by Lamb. Lamb's information was further corroborated by a confidential informant whose information is detailed in Marshall's affidavit. In view of all of the other information provided upon the warrant application, the decision of the Canadian court is not so significant that its omission vitiates the finding of probable cause.

Next, we hold that County Court incorrectly determined that the People failed to comply with CPL 700.50 (2), which requires immediate sealing of all evidence seized pursuant to an eavesdropping warrant. The statute provides that: "Immediately upon the expiration of the period of an eavesdropping warrant, the recordings * * * must be made available to the issuing justice and sealed under his directions" (CPL 700.50 [2]). The People bear the burden of proving strict compliance with these sealing requirements (see, People v Winograd, 68 NY2d 383, 394; People v Basilicato, 64 NY2d 103, 116). While a one-day delay in sealing has been excused, even absent an explanation, any additional delay, if not satisfactorily explained, requires suppression (see, People v Winograd, supra; People v Gallina, 66 NY2d 52, 59). Here, the initial warrant expired at midnight on Friday, June 22, 1984. Justice Kane told Kelly in advance that he would not be available to seal the tapes until the following Monday, June 25, 1984, and told Kelly to bring the tapes for sealing on that day. The first extension expired at midnight on Sunday, July 22, 1984. Justice Kane told Kelly in advance that he would not be available until Tuesday, July 24, 1984, and told Kelly to bring the tapes for sealing on that date. Finally, the fifth extension expired at midnight on Friday, October 19, 1984. Prior to that time Justice Kane told Kelly that he would be unavailable until Monday, October 22, 1984, and told Kelly to bring him the tapes for sealing on that date. The People offered affidavits of Kelly and Justice Kane to establish these facts. This is not a case where no excuse was offered or where the People learned, after the fact, that the issuing Justice was unavailable. Here, prior to the expiration of the warrant and the relevant extensions, the issuing Justice advised the People that he would not be available immediately upon the expira-

tion thereof and made arrangements for sealing immediately upon his return. Such directions were complied with. Therefore, in this case, the brief delay in sealing the tapes was justified *(see, People v Edelstein,* 54 NY2d 306, 309-310).

MIKOLL, YESAWICH, JR., HARVEY and MERCURE, JJ., concur.

Order reversed, on the law, and motion denied.