THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PASQUALE VERSACE, Appellant.

Second Department, March 24, 1980

**APPEARANCES OF COUNSEL**

*Lenefsky & Lenefsky, P. C. (David Lenefsky* of counsel), for appellant.

*Carl A. Vergari, District Attorney (Stephanie Mary Mahon* and *Gerald D. Reilly* of counsel), for respondent.

**OPINION OF THE COURT**

O'CONNOR, J.

A tip received from a reliable informant triggered a police investigation into allegations that a substantial gambling operation was being conducted at the 19th Hole Bar in White Plains. In May, 1977 Carl Vergari, the Westchester County District Attorney, sought an eavesdropping warrant for two telephones located on the premises. In support of the application, Detective Robert Pockl asserted that a prolonged period of surveillance had been unable to establish who supervised and controlled the gambling operation. It was these higher echelon people who were the targets of the probe. Attempts to infiltrate the group involved in the illicit activity had proven unavailing because those involved were very careful and wary in protecting their enterprise. Associates of the targets would not reveal information. Search warrants had been executed on the premises in the past, and they had uncovered illegal policy slips, but access to higher-ups could not be realized in this manner. On May 6, 1977 Judge LEGGETT issued a 30-day eavesdropping warrant for two telephones located at the premises in question.

The investigation mushroomed as a result of the success of the initial tap. On June 2 Judge LEGGETT issued a 30-day eavesdropping warrant for the private telephone of James Williams. Williams, who had a prior gambling conviction, had

been recorded discussing various gambling transactions on four separate occasions over the 19th Hole Bar telephones. Pockl, in seeking the Williams warrant, asserted that conventional surveillance of Williams' private residence could not be conducted because of an absence of adjacent buildings and the nature of the neighborhood. Furthermore, Williams had always been cautious and search warrants previously executed against him had not resulted in arrests. Conventional surveillance would also not lead to the gathering of evidence against the loftier hierarchy of the operation.

The intricate web of the outlawed business continued to reveal itself to the listening ears of the police, and on June 27, a third 30-day eavesdropping warrant was issued by Judge LEGGETT to tap the telephone at the Neighborhood Store, a business establishment operated by defendant's brother, Rick Versace. In obtaining the warrant, Pockl noted that Rick Versace had two prior gambling convictions, and further related the substance of four conversations between June 8 and June 18 which indicated that Rick Versace was one of the higher-ups in the operation. The difficulty with conducting conventional surveillance and investigative techniques was again cited as a basis for obtaining the warrant.

Finally, on July 2, Judge COUZENS authorized a 15-day extension of the original Williams warrant, which expired on that day. Pockl claimed that the hierarchy of the conspiracy was finally becoming vulnerable. Reliance was placed on various intercepted conversations involving gambling, including at least five communications between Williams and defendant between June 14 and June 25 during which defendant provided Williams with tabulations on policy bets collected by Williams' runners.

The original Williams tap expired on July 2 but the tapes were not sealed until July 13. The Williams extension order expired July 18 and the tapes were sealed that same day. On July 29, some 40 hours after the warrant expired, the District Attorney's staff sealed the tapes from the Neighborhood Store tap, and the tapes were judicially sealed on August 1.

On July 25 Judge MARTIN issued a search warrant for defendant's residence. In applying for the warrant, Pockl relied on several matters: A June 30 conversation obtained from the original Williams tap indicated defendant gave money to Williams to distribute to winners. Again on July 14 Williams and defendant discussed various gambling matters.

A tape from the tap on the Neighborhood Store showed that defendant and his brother, Rick, both with criminal records, had talked about betting. The conversation also indicated that defendant kept illegal gambling records at home for reference purposes. Williams had already been arrested on July 20.

The search of defendant's house led to the discovery of an unregistered .25 caliber pistol and a slot machine. By order dated April 3, 1978 Judge LEGGETT ruled, *inter alia,* that the initial warrant on the 19th Hole Bar was properly issued, that the circumstances justified the use of eavesdropping methods of investigation, and that other technical objections were without merit. In response to subsequent suppression motions Judge DELANEY found that the warrants to eavesdrop on the Neighborhood Store and to extend the Williams tap were proper, as was the issuance of the search warrant on July 25. The tapes from the original Williams tap would have to be suppressed, however, because of the unreasonable 11-day delay in sealing them.

Defendant subsequently pleaded guilty to the crime of attempted criminal possession of a weapon in the third degree. This appeal followed. We now affirm.

■ At the outset we reject defendant's assertion that Judge LEGGETT could not pass upon the motion to suppress a warrant that Judge LEGGETT had himself authorized because it placed him in an untenable dual capacity. What occurred is not a desirable procedure to follow when alternatives exist, and in the future such a situation should be avoided if possible. No express statutory prohibition precludes it however (CPL 710.50) and there is no basis for assuming that defendant's motion received anything other than fair and impartial consideration (see *People v Gatti,* 16 NY2d 251; *People v Smith,* 41 AD2d 893).

■ Defendant next maintains that the Pockl affidavits failed to demonstrate that normal investigative procedures had failed or reasonably appeared unlikely to succeed if tried or were too dangerous to employ (CPL 700.15, subd 4; 700.20, subd 2, par [d]). We do not agree. In considering defendant's claim a practical and common sense approach must be utilized *(United States v Fury,* 554 F2d 522, 530, cert den *sub nom. Quinn v United States,* 433 US 910, 436 US 931). The statutory requirements are not aimed at preventing electronic surveillance until all other possible methods of investigation have been exhausted. Rather, "they only require that the

agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods" *(United States v Hinton,* 543 F2d 1002, 1011, cert den *sub nom. Carter v United States,* 429 US 980, *sub nom. Darby v United States,* 429 US 1051, *sub nom. Bates v United States,* 429 US 1066, *sub nom. Cameron v United States,* 430 US 982). In seeking the warrants, Pockl noted, although without specificity, that previous attempts to infiltrate the conspiracy had proven unsuccessful. He further noted that the targets of the investigation were not vulnerable by way of conventional techniques. Many of the individuals the police were aware of had criminal records and were careful and evasive. The buildings involved did not lend themselves to simple physical surveillance. The execution of search warrants had not revealed the information sought. Under these adverse conditions, the issuance of the eavesdropping warrants was fully justified because a practical analysis indicates that normal procedures were unlikely to reveal evidence against the high echelon of the conspiracy (see *United States v Fury, supra,* pp 529-530; *United States v Hinton, supra,* p 1011).

As already noted, the tapes of the initial Williams tap were suppressed because the sealing did not occur until July 13, 11 days after the warrant had expired. Premised upon this, defendant now argues that the July 25 search warrant should be suppressed as fruit of the poisoned tree (see *Wong Sun v United States,* 371 US 471). It is urged that this factual situation distinguishes itself from the cases of *People v Iucci* (61 AD2d 1) and *People v Weiss* (63 AD2d 662, affd 48 NY2d 988) where search warrants were issued before the obligation to seal the underlying tapes arose.

This claim is untenable. Both the warrant for the Neighborhood Store and the Williams extension warrant were obtained prior to the obligation to seal the original Williams tapes arose. These subsequent warrants thus were free from taint at the time they were acquired and were not rendered invalid when the original Williams tapes were not properly sealed (see *People v Iucci, supra; People v Weiss, supra).* The Williams extension tapes were properly sealed and the Neighborhood Store tap was still in effect at the time the search warrant for defendant's home was issued. The evidence garnered by these two eavesdropping warrants established, both

independently and jointly, more than sufficient probable cause for the issuance of the search warrant.

Defendant's other contentions are without merit. As already discussed, probable cause for the issuance of the search warrant existed. The sentence imposed was a proper one. Accordingly, the judgment of conviction should be affirmed.

HOPKINS, J. P., RABIN and WEINSTEIN, JJ., concur.

Judgment of the County Court, Westchester County, rendered October 16, 1978, affirmed.

The case is remitted to the County Court, Westchester County, for further proceedings pursuant to CPL 460.50 (subd 5).