THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JOSEPH VISCOMI, Respondent.

Fourth Department, November 15, 1985

APPEARANCES OF COUNSEL

*Richard A. Hennessy, Jr.,* District Attorney *(John A. Cirando* and *Beth J. Van Doren* of counsel), for appellant.

*McGraw & Wegerski (James R. McGraw* of counsel), for respondent.

OPINION OF THE COURT

GREEN, J.

The People appeal from an order granting defendant's motion to suppress all evidence obtained pursuant to three eavesdropping warrants *(see,* CPL 450.20 [8]; 450.50 [1]). We affirm because the applications in support of the warrants failed to establish that normal investigative techniques had been tried without success or that they would be unlikely to succeed if tried *(see,* CPL 700.15 [4]).

At the outset, it is important to recall that a wiretap is a most serious invasion of privacy and individual liberty *(see, Olmstead v United States,* 277 US 438, 471 [Brandeis, J., dissenting]). The tapping of a person's telephone invades the privacy of every other person whom that person may call or who may call him. Our application of CPL 700.15 (4), there-

fore, must be sensitive to the constitutional guarantees against search and seizure that the statute seeks to protect and the statute must be strictly construed *(see, People v Washington,* 46 NY2d 116, 121-122; *People v Paluska,* 109 AD2d 389, 391). Electronic surveillance is appropriate only when necessary *(United States v Kahn,* 415 US 143, 153, n 12) and is "not to be routinely employed as the initial step in criminal investigation" *(United States v Giordano,* 416 US 505, 515). Thus, no eavesdropping warrant may issue absent "a showing that normal investigative procedures have been tried and have failed, or reasonably appear to be unlikely to succeed if tried, or to be too dangerous to employ" (CPL 700.15 [4]; *see also,* 18 USC § 2518 [1] [c]).

The affidavits in support of warrants 83-2 and 83-3 merely recite that "due to the fact conventional investigative techniques have proved fruitless in obtaining the identities of the co-conspirators and drug suppliers, only the installation of an eavesdropping device * * * in order to obtain the identities of these persons, would be feasible." Clearly, the police did not demonstrate that "normal investigative procedures [had] been tried and failed" (CPL 700.15 [4]). They resorted to wiretaps in the first instance. They did not engage in physical surveillance of any suspects. There is no claim here that the police did not have access to the areas in which the drug transactions allegedly occurred. Defendant resided in a single-family house in a suburban neighborhood *(cf. United States v Kerrigan,* 514 F2d 35, 38, *cert denied* 423 US 924; *People v Teicher,* 52 NY2d 638, 655-656; *People v Versace,* 73 AD2d 304, 308). Nor do the affidavits allege any facts which indicate that defendant was particularly evasive *(cf. United States v Terry,* 702 F2d 299; *United States v Hinton,* 543 F2d 1002; *People v Romney,* 77 AD2d 482).

Thus, the only way to comply with the statute was for the police to establish that the employment of normal investigative techniques "reasonably appear to be unlikely to succeed if tried" (CPL 700.15 [4]). The affidavits, however, fail to mention any facts indicating that the police investigation involved anything other than a routine narcotics operation *(see, United States v Lilla,* 699 F2d 99, 105). No investigatory efforts are disclosed. Lieutenant Sardino's affidavit in support of the application for wiretap 83-1 recited only that other investigative procedures were too dangerous "due to the high level of police awareness" of one of the suspects. This conclusory

statement, however, was inconsistent with the officer's own description of the investigation in which he acknowledged that on at least three occasions he purchased drugs from the suspect and that he could purchase more drugs at any time. This is precisely the sort of success with normal investigative procedures which indicates that resort to the highly intrusive use of electronic surveillance is unnecessary *(United States v Lilla,* 699 F2d 99, 104-105, *supra).* Thus, the use of a wiretap here was "merely a useful additional tool" which should never have been authorized *(People v Brenes,* 53 AD2d 78, 80, *affd* 42 NY2d 41).

Under the rationale of the dissent, any time the police want to wiretap a criminal suspect's phone, all they need to allege is that normal investigative procedures will not suffice. Mere conclusions of the affiant, however, do not satisfy the strict statutory requirements *(see, United States v Kalustian,* 529 F2d 585, 590). Much of what the dissent relies upon to sustain the warrants could be said of any drug investigation. The identity of suppliers is rarely revealed. Drug sellers are frequently wary of police surveillance. Nothing in the affidavits distinguishes this case from any other drug case. We reject the dissent's implication that since all drug cases are tough to crack, the government need only show that narcotics activity is afoot to justify electronic surveillance. The wiretap statute and precedent do not support this view *(see, e.g., United States v Lilla, supra; United States v Kalustian, supra; People v Gallina,* 66 NY2d 52). Accordingly, the order of suppression should be affirmed.

BOOMER, J. (dissenting). I respectfully dissent. The facts supporting the applications for the eavesdropping warrants were sufficient to show that "normal investigative procedures * * * reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ". (CPL 700.20 [2] [d].) "The statutory requirements are not aimed at preventing electronic surveillance until all other possible methods of investigation have been exhausted. Rather, 'they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods' ". *(People v Versace,* 73 AD2d 304, 307-308; *see, People v Carson,* 99 AD2d 664.) More traditional investigative techniques need not be exhausted if they are "impractical" *(see, United States v Fury,* 554 F2d 522, 530, n 7, *cert denied sub nom. Quinn v United States,* 433 US 910). The other investigative procedures

requirement is "designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime" *(United States v Kahn,* 415 US 143, 153, n 12; *see also, United States v Fury, supra,* p 530). "The required showing must be ' "tested in a practical and commonsense fashion" ' *(United States v Lilla,* 699 F2d 99, 103; see, also, *People v Versace, supra,* p 307) in the context of the objectives of the investigation as delineated in the People's application" *(People v Carson,* 99 AD2d 664, 665, *supra).*

Treating the People's showing in a practical and commonsense fashion in the context of the objectives of the investigation as delineated in the application, I find that the court did not abuse its discretion in issuing the warrants. The applications show that the police used traditional investigative techniques to make three purchases of cocaine from a drug seller at the street level. These techniques were unsuccessful in revealing the identity of suppliers higher in the chain of illicit drug distribution and in gathering evidence against them. The seller of the cocaine had exhibited extreme wariness of police surveillance and was suspicious of the undercover officer who had made the purchases. It was obvious that he was unlikely to reveal the source of his supplier to the undercover officer and further surveillance of him was not only dangerous, but it would be unlikely to lead to information necessary to identify and convict his supplier and other wholesale distributors.

"[A] practical analysis indicates that normal procedures were unlikely to reveal evidence against the high echelon of the conspiracy". *(People v Versace,* 73 AD2d 304, 308, *supra.)* Given the facts alleged in the application, that attempts to gain access to the upper hierarchy of the drug operation by the use of undercover operatives had failed, "and with the understanding that in a [cocaine] smuggling investigation ordinary methods of investigation are usually unavailing * * * there was substantial compliance with the statutory requirement". *(United States v Falcone,* 364 F Supp 877, 890, *affd* 500 F2d 1401, 505 F2d 478, *cert denied* 420 US 955.)

HANCOCK, JR., J. P., CALLAHAN and DENMAN, JJ., concur with GREEN, J.; BOOMER, J., dissents and votes to reverse the order and deny the motion in a separate opinion.

Order affirmed.