[681 NYS2d 420]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TRACY R. FONVILLE, Appellant.

Fourth Department, October 2, 1998

## APPEARANCES OF COUNSEL

*Linda S. Reynolds,* Buffalo (*Vincent Gugino* of counsel), for appellant.

*Frank J. Clark, District Attorney* of Erie County, Buffalo (*Steven Meyer* of counsel), for respondent.

### OPINION OF THE COURT

DENMAN, P. J.

Defendants, Tracy R. Fonville and Dorian D. Batchelor, each appeal from a judgment of Supreme Court convicting each, following a joint trial, of criminal possession of a controlled substance in the first degree (Penal Law § 220.21 [1]), criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]), conspiracy in the second degree (Penal Law § 105.15), criminal possession of a controlled substance in the seventh degree (two counts) (Penal Law § 220.03) and criminally using drug paraphernalia in the second degree (three counts) (Penal Law § 220.50 [1], [2], [3]). Fonville was sentenced to 22 years to life and Batchelor was sentenced to 25 years to life.

Defendants argue that the judgments must be reversed, certain evidence suppressed, and the indictment dismissed on several grounds, of which we need consider only three. We conclude that all eavesdropping evidence, and all tangible evidence derived therefrom, should be suppressed because of the failure of the applicants to show the necessity for the eavesdropping warrants, and because the eavesdropping warrant

applications contained material falsehoods and omissions relating to the issue of necessity (*see*, CPL 700.15 [4]; 700.20 [2]). Additionally, the eavesdropping evidence seized pursuant to the Walker and Batchelor warrants, and tangible evidence seized pursuant to the search warrant issued on June 9, 1994, after the obligation to seal the tapes arose, should be suppressed because of the failure to seal the tapes immediately (*see*, CPL 700.50 [2]). Consequently, the judgments of conviction should be reversed, the motions to suppress the intercepted communications and tangible evidence granted, and the indictment dismissed.

### BACKGROUND

Defendants and their accomplices were indicted for multiple drug offenses in June 1994. The indictment resulted from a State Police investigation that began in April 1994 and culminated in June 1994. The investigation proceeded generally through the following stages: investigation into the activities of Nicholas Buster and associates between April 20 and April 25, 1994; eavesdropping on Buster's telephone pursuant to a warrant issued on April 26, 1994 and amended on May 6, 1994; eavesdropping on the telephone of Samuel Walker (also known as Samuel Harris) pursuant to a warrant issued on May 10, 1994 and amended on May 19, 1994; eavesdropping on Batchelor's telephone pursuant to a warrant issued on May 24, 1994; physical surveillance of Buster, Harris, Andre Thompson, Fonville and Batchelor in New York and Florida throughout May and early June 1994; the arrest of Batchelor at the Buffalo Airport at 12:45 P.M. on June 6, 1994; the seizure of drug packaging material from his luggage pursuant to a warrant issued on June 5; the arrest of Fonville at the airport later that day; the seizure of cocaine from her luggage pursuant to a warrant issued on June 5; the arrest of defendants' accomplices, including Walker, later on June 6; the seizure of tangible evidence from 64 Brunswick Boulevard pursuant to a warrant issued on June 6; and the subsequent seizure of tangible evidence from 216 Summer Street pursuant to a warrant issued on June 9, 1994.

The convictions for first and third degree possession stemmed from the seizure of 1.5 kilograms of cocaine from Fonville's luggage. The convictions for seventh degree possession stemmed from the seizure of smaller amounts of cocaine and heroin from 216 Summer Street. The convictions for using drug paraphernalia stemmed from the seizure of dilutants, glassine envelopes,

and a scale from 216 Summer Street. The convictions for conspiracy were supported by, among other evidence, the contraband and other items seized pursuant to the search warrants and the incriminating conversations intercepted pursuant to the eavesdropping warrants.

THERE WAS AN INSUFFICIENT SHOWING OF NECESSITY FOR ISSUANCE OF THE EAVESDROPPING WARRANTS; FURTHER, THE APPLICATIONS CONTAINED FALSEHOODS AND MATERIAL OMISSIONS CONCERNING THE NECESSITY FOR THE WIRETAPS.

Defendants' first two challenges to the eavesdropping warrants are interrelated. Defendants challenge the sufficiency of the showing of necessity in the applications for the initial Buster eavesdropping warrant and its amendment; for the initial Walker eavesdropping warrant and its amendment; and for the Batchelor eavesdropping warrant.*

No eavesdropping warrant may issue absent "a showing that normal investigative procedures have been tried and have failed, or reasonably appear to be unlikely to succeed if tried, or to be too dangerous to employ" (CPL 700.15 [4]). An application for an eavesdropping warrant "must contain * * * [a] full and complete statement of facts establishing that normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ, to obtain the evidence sought" (CPL 700.20 [2] [d]). That requirement of necessity is imposed as a matter of Federal constitutional law under Supreme Court de-

---

* At the outset, the issue of standing must be addressed. Batchelor was heard on the Buster, Walker and Batchelor wiretaps, thus giving him standing to contest the issuance of all of the warrants and amended warrants (*see*, CPL 710.10 [5]; CPLR 4506 [2]). Fonville was not heard on the Buster wiretap, nor did she have a proprietary interest in Buster's telephone (*see generally*, CPL 710.10 [5]; CPLR 4506 [2]; *People v Castrovinci*, 204 AD2d 346; *People v Caponigro*, 163 AD2d 527, *lv denied* 76 NY2d 984). Thus, as the People assert, Fonville has no standing to contest the Buster wiretap. On the other hand, Fonville's standing to contest the Walker and Batchelor wiretaps is conceded by the People. Fonville's lack of standing to challenge the Buster wiretap ultimately has no impact on the appeal. Fonville's challenges to the Walker and Batchelor wiretaps require suppression of all wiretap evidence, as well as all derivative tangible evidence, admitted against Fonville.

cisions applying the Fourth Amendment's reasonableness requirement to electronic surveillance (*see, Berger v New York*, 388 US 41, 58-60; *see also, United States v Giordano*, 416 US 505, 515). Further, the necessity requirement is set forth in a Federal statute, which binds the States by its terms and as a matter of Federal supremacy (*see, People v Teicher*, 52 NY2d 638, 652; *People v Shapiro*, 50 NY2d 747, 763-765; *see generally*, 18 USC § 2510 *et seq.*; *United States v Donovan*, 429 US 413, 435). The rule ensures that electronic surveillance be resorted to with restraint and only when necessary (*see, United States v Kahn*, 415 US 143, 153, n 12). It is not to be routinely employed as an initial step in a criminal·investigation (*see, United States v Giordano, supra*, at 515; *People v Candella*, 171 AD2d 329, 332).

The law does not require that all possible investigative techniques, or any particular investigative technique, be tried, or that electronic surveillance be sought only as a last resort (*see, People v Gallina*, 95 AD2d 336, 339-340). However, police must apprise the issuing court of the nature and progress of the investigation, and of the difficulties inherent in the use of normal law enforcement methods, sufficient to ensure that eavesdropping is more than just a "useful tool" in the investigation (*see, People v Hafner*, 152 AD2d 961, 962; *People v Baris*, 116 AD2d 174, 187, *lv denied* 67 NY2d 1050; *People v Carson*, 99 AD2d 664). Conclusory allegations of necessity are insufficient to support issuance of the warrant (*see, People v Bavisotto*, 120 AD2d 985, *lv denied* 68 NY2d 912, *cert denied* 480 US 933; *People v Viscomi*, 113 AD2d 76, 77-78, *lv denied* 67 NY2d 658). The reviewing court must test the People's showing of necessity in a practical and commonsense fashion in the context of the objectives of the investigation (*see, People v Hafner, supra*, at 962; *People v Campaigni*, 151 AD2d 1010, *lv denied* 74 NY2d 845; *People v Baris, supra*, at 187). Police must strictly comply with all requirements of the eavesdropping statutes in connection with each warrant sought (*see, People v Bialostok*, 80 NY2d 738, 743-745, *mot to recall opn denied* 81 NY2d 995; *People v Liberatore*, 79 NY2d 208, 212-213), and the burden of establishing compliance rests with the prosecution (*see, People v Winograd*, 68 NY2d 383, 390-391). Absent "meticulous" compliance (*People v Liberatore, supra*, at 213), police lack authority to wiretap, any interceptions they make are unlawful, and such interceptions and any evidence derived therefrom are inadmissible (*see, People v Capolongo*, 85 NY2d 151, 159-160, 165; *People v Bialostok, supra*, at 747;

*People v Winograd, supra,* at 391; *People v Schulz,* 67 NY2d 144, 148; *see generally,* CPLR 4506 [1], [3], [4]).

Defendants also contend that the warrant applications contain material false allegations or omissions concerning the necessity for eavesdropping, particularly the potential or actual fruitfulness of surveillance and other investigative alternatives to eavesdropping. A warrant may be vitiated upon a showing that it was issued on the basis of false averments of the affiant (*see generally, Franks v Delaware,* 438 US 154; *People v Cohen,* 90 NY2d 632, 637; *People v Alfinito,* 16 NY2d 181, 186). In challenging the veracity of the affiant, a defendant must show, by a preponderance of the evidence, that the affiant knowingly or recklessly made a materially false representation (*see, Franks v Delaware, supra,* at 155-156; *People v Tambe,* 71 NY2d 492, 504; *People v Ingram,* 79 AD2d 1088). The *Franks / Alfinito* test pertains not only to affirmative misrepresentations, but also to misleading omissions of material fact (*see, People v Seybold,* 216 AD2d 935).

Here, the alleged misstatements relate to the issue of necessity. The question thus is whether there were deliberate false statements and/or misleading omissions of material fact that, when corrected, so undermine the allegations of necessity as to render the application insufficient to support the eavesdropping warrants (*see, United States v Guerra-Marez,* 928 F2d 665, 670-671, *cert denied* 502 US 917, *cert denied sub nom. Paredes-Moya v United States,* 502 US 969; *United States v Simpson,* 813 F2d 1462, 1471-1472, *cert denied* 484 US 898; *United States v Ippolito,* 774 F2d 1482, 1485-1487).

The initial warrant to tap Buster's telephone was issued based on the affidavit of a State Police officer, who averred that electronic surveillance was necessary and that "normal investigative techniques will not result in the identification, indictment, or conviction of all the accomplices and co-conspirators in this drug distribution enterprise." The affiant set forth the following reasons: that street surveillance alone could not identify accomplices or link individuals to the enterprise; that eavesdropping was necessary to enable police to obtain names, addresses, telephone numbers and "codes"; that surveillance had proven to be "very difficult" and unsafe; that close surveillance of Buster and other subjects was "virtually impossible" and would jeopardize the case; that executing a search warrant against Buster would not uncover his sources or storage locations; that interrogation of the subjects would alert them to the investigation; that the subjects would not co-

operate with a Grand Jury and, in any event, would have to be granted immunity; and, finally, that arresting Buster would reveal the identity of the informant and curtail the informant's effectiveness in this and other investigations.

Although those averments appear to be detailed and might ordinarily be sufficient, it has been convincingly shown that those averments were not germane to this investigation. In fact, the averments had been taken verbatim from a series of eavesdropping warrant applications submitted by State Police in an unrelated investigation (the Highsmith-Williams investigation), the only change being the substitution of Buster's name for the names of Highsmith and Williams. The practice of using template allegations of necessity is to be condemned (*see, United States v Castillo-Garcia*, 117 F3d 1179, 1195-1196, *cert denied sub nom. Armendariz-Amaya v United States*, 522 US 962, *cert denied sub nom. Avila v United States*, 522 US 974, *United States v Carneiro*, 861 F2d 1171, 1180, 1182). "The reason for requiring specificity is to prevent the government from making general allegations about classes of cases and thereby sidestepping the requirement that there be necessity in the particular investigation in which a wiretap is sought" (*United States v Ippolito, supra,* at 1486).

██ The failure to make particularized allegations of necessity was exacerbated by the misrepresentation or concealment of facts showing that other investigative techniques had not been unavailing or were likely to be successful. Here, the boilerplate allegations of necessity were contradicted by factual allegations in the warrant applications, by the officers' averments in opposition to defendants' motions to suppress, and by the officers' testimony at the lengthy necessity/*Franks*/*Alfinito* hearing conducted by the court. Such evidence established that this investigation was in its infancy when police applied for the Buster wiretap, despite the affiant's misleading assertion that Buster's "enterprise was infiltrated by a cooperating individual in February, 1994." In truth, police first met with the informant on April 18, 1994, a mere eight days before they applied for the wiretap. Police did not begin actively investigating Buster until April 21, five days before applying for the eavesdropping warrant. Although there is no bright line test with respect to how long an investigation must be conducted before a wiretap is sought, here it is manifest that normal investigative techniques had not been tried.

In that regard, *People v Candella* (171 AD2d 329, *supra*) is instructive. Holding that the application failed to set forth ade-

quate justification for wiretapping, we noted there that the investigation was "only about two months old" at the time of the warrant application and that "the effort expended by the police was minimal" (*People v Candella, supra,* at 332). Here, police sought the warrant after a far more cursory investigation, and their efforts were even more "minimal." Although there is no requirement that the investigation be of any particular length, where eavesdropping warrants have been upheld, courts have made it a point to observe that other methods had proved fruitless despite much longer investigation (*see, e.g., People v Carson,* 99 AD2d 664, 665, *supra* [describing five-month investigation during which police "were unable to gather any evidence"]; *see also, People v Quezada,* 145 AD2d 950, 950-951 [five-month investigation]; *People v Baris,* 116 AD2d 174, 177-178, *supra* [six-month investigation]). In sum, the reference in the application to the informant's infiltration of the enterprise in February 1994 was a material misrepresentation, and the failure to reveal the actual onset of the investigation was a material omission. Correcting those misrepresentations undermines the showing of necessity for the Buster wiretap.

Further, the conclusory allegations of necessity are disproved by other facts recited in the application, admitted in the motion papers, or established at the hearing. Such facts tend to show that alternative investigative methods had been successful or were likely to be availing (*see, People v Candella, supra,* at 332-333; *People v Viscomi, supra,* at 77-78). For example, although it was asserted in boilerplate that infiltration by the informant would be fruitless, it was established that police recorded a conversation between the informant and Buster on April 21, 1994. Buster immediately took the informant into his confidence, offering to give the informant cocaine if the informant would buy two cellular telephones and put service in his name, and accompanying the informant to buy the telephones and obtain the service contracts. The next day, police recorded a conversation in which Buster agreed to sell the informant cocaine. Although that deal was not completed, Buster gave the informant his pager number. Nonetheless, police made no further attempts to set up controlled buys prior to seeking the wiretap warrant (*see, People v Viscomi, supra,* at 77-78). Moreover, contrary to the averment that surveillance would be fruitless and dangerous, the record establishes that, for the next five weeks, police kept various subjects of the investigation, including Buster, Walker, Batchelor and Fonville, under extensive surveillance in New York and Florida.

Again, our decision in *People v Candella (supra)* is instructive. Here, as in *Candella*, "[a]lthough the police had been [almost] successful in arranging a controlled purchase of cocaine from [Buster], they failed to follow up on this method. This was not a situation where [Buster] was acting in an evasive manner and refused to deal with the informant * * * or where the informant had tried to get [Buster] to identify his sources and had been rebuffed * * * The relative ease with which the informant arranged a buy directly [with Buster] belies any notion that using the informant to obtain further information would have been unproductive. Moreover, the assertions in the application that [surveillance would be ineffective are] directly contradicted by the fact that surveillance was successfully accomplished after the eavesdropping warrant was granted" (*People v Candella, supra*, at 332-333, citing *People v Likely*, 166 AD2d 872, 873; *cf., People v Bachiller*, 159 AD2d 955, *lv denied* 76 NY2d 784; *People v Hafner, supra*, at 962; *People v Campaigni*, 151 AD2d 1010, *supra*). For the foregoing reasons, we conclude that the initial application is insufficient on its face to show the necessity for tapping Buster's telephone. We further conclude, in any event, that the application contains false statements and material omissions that, when corrected, disprove the necessity for the wiretap.

The applications for the other eavesdropping warrants suffer from the same defects. Like the Buster application, the subsequent applications contain boilerplate allegations of necessity taken verbatim from the Highsmith-Williams applications. Such allegations are impermissibly vague and conclusory and lack any relationship to this investigation (*see, United States v Castillo-Garcia, supra*, at 1188, 1195-1196; *cf., United States v Carneiro, supra*, at 1180, 1182).

Moreover, notwithstanding allegations to the contrary, it was established that other investigative techniques, including surveillance and controlled buys, were effectively used throughout the investigation, thus demonstrating that normal investigative techniques had not failed. In addition, despite the conclusory allegation that other investigative methods would be difficult or impossible, the record demonstrates that police engaged in far-ranging surveillance of the various subjects of the investigation, both before and after each wiretap was put in place (*see, People v Candella, supra*, at 332-333; *People v Likely, supra*, at 873; *cf., People v Viscomi, supra*, at 77). Further, police successfully arranged controlled buys on May 12 and May 23, 1994 (*see, People v Candella, supra*, at 332-333).

The May 23 buy, which took place one day before police obtained the warrant to tap Batchelor's telephone, was arranged between an undercover investigator and Bernard Holmes, one of Batchelor's main dealers; Batchelor was observed at the scene. The record reveals many other investigative steps not disclosed by the warrant applications.

We conclude that, taking into account such facts, and with such misinformation corrected, the warrant applications fail to make a sufficient showing of necessity (*see, United States v Carneiro, supra,* at 1181-1183). The record establishes that, for reasons of expediency, investigators impermissibly moved " 'swiftly from wiretap to wiretap, without pausing to consider whether normal investigative procedures could be used effectively, particularly in light of any evidence obtained as a result of each succeeding wiretap' " (*United States v Castillo-Garcia, supra,* at 1196).

Inasmuch as the wiretaps should not have been authorized, all intercepted conversations and all evidence derived therefrom must be suppressed. Because the arrests and seizures flowed directly from the intercepted conversations, all tangible evidence must be suppressed. Further, the intercepted communications and tangible evidence are essential to the convictions for possession and conspiracy. Thus, the judgments of conviction must be reversed, the motions to suppress granted, and the indictment dismissed.

### THERE WAS UNJUSTIFIED DELAY
### IN SEALING THE TAPES

Defendants additionally challenge the admissibility of the Walker and Batchelor wiretap evidence, and tangible evidence derived therefrom, on the ground that the People did not "[i]mmediately" present the tapes to the issuing Judge for sealing, as required by CPL 700.50 (2). That requirement is based on Federal constitutional requirements (*see generally, People v Washington,* 46 NY2d 116, 122, citing *Berger v New York,* 388 US 41, 60, *supra*). As such, untimely sealing may result in suppression of not only the primary eavesdropping evidence, but also any evidence derived therefrom. More particularly, a sealing violation would require suppression of secondary evidence seized pursuant to a warrant obtained after the obligation to seal arose (here, the June 9th warrant) (*see, People v Seidita,* 49 NY2d 755, 756; *People v Weiss,* 48 NY2d 988, 989; *People v McGuire,* 109 AD2d 921, 921-922; *People v Versace,* 73 AD2d 304, 308; *cf., People v Cordovano,* 98 AD2d 949).

CPL 700.50 (2) provides: "Immediately upon the expiration of the period of an eavesdropping or video surveillance warrant, the recordings of communications or observations made pursuant to subdivision three of section 700.35 must be made available to the issuing justice and sealed under his directions." The requirement of immediate sealing is "strictly construed to effectuate the purposes of preventing tampering, alterations or editing of the tapes, aiding in establishing a chain of custody and protecting the confidentiality of the tapes" (*People v Winograd*, 68 NY2d 383, 394, *supra*; *see, People v Gallina*, 66 NY2d 52, 59; *People v Basilicato*, 64 NY2d 103, 116; *People v Washington, supra*, at 122-123; *People v Nicoletti*, 34 NY2d 249, 253). A defendant is not required to prove that the tapes were tampered with; rather, because potential for abuse is the overriding factor, the People must satisfactorily explain any delay in sealing (*see, People v Winograd, supra*, at 394; *People v Basilicato, supra*, at 116; *People v Washington, supra*, at 123-124; *see also*, CPL 700.65 [3]).

The Court of Appeals has held that the "sealing of tapes on the day following the termination date of a wiretap warrant is generally sufficient" (*People v Edelstein*, 54 NY2d 306, 310, *rearg denied* 55 NY2d 878), implying that a delay of more than one day is not (*see, People v Basilicato, supra*, at 116, citing *People v Edelstein, supra*). Beyond that, "any delay, if not satisfactorily explained, requires suppression" (*People v Winograd, supra*, at 394). Actually, *Edelstein* excuses a delay of one day beyond the one-day grace period, on the ground that the day following the termination of the wiretaps was a Sunday on which the issuing Justices were unavailable (*see, People v Edelstein, supra*, at 309-310).

Subsequent cases call the validity of that analysis into question, however. *Winograd* and *Basilicato* hold that " 'the immediate sealing requirement of the statute makes no exception for weekends' " or holidays, and that, where no excuse is offered for the failure to contact the issuing Justice, the intervening weekend or holiday is not a satisfactory explanation for noncompliance with the statute (*People v Winograd, supra*, at 395, quoting *People v Basilicato, supra*, at 117). Further, the unavailability of the issuing Justice or supervising Justice is not an excuse " 'in a county where several justices are present each business day' " (*People v Winograd, supra*, at 394, quoting *People v Gallina, supra*, at 60). *Winograd* thus requires suppression for a delay in sealing from Saturday until Monday, or a two-day delay (*People v Winograd, supra*, at 395). Similarly,

*Gallina* requires suppression for a delay in sealing of "almost two full business days" (*People v Gallina, supra,* at 60).

In this case, the sealing obligation arose at 12:45 P.M. on Monday, June 6, 1994, when Batchelor was arrested and his cellular telephone seized, and about 5:00 P.M. that afternoon, when Walker was arrested and his cellular telephone seized. As defendants argue, the investigative objective of intercepting the suspects' telephone conversations had been completely achieved by that time and "the period of an eavesdropping * * * warrant" had thus expired (CPL 700.50 [2]). The period of time during which interception is authorized automatically terminates upon attainment of the objective of the authorization, and warrants must so provide by their terms (*see,* CPL 700.20 [2] [e]; 700.30 [7]; *People v Bialostok,* 80 NY2d 738, 746-747, *supra; see generally, People v Washington, supra,* at 122).

The People argue that the Batchelor and Walker warrants did not expire, and the obligation to seal the tapes thus did not arise, until investigators actually shut down electronic surveillance at about 6:00 P.M. on June 6. The People's approach conflicts with the reasoning in *Bialostok,* which holds, in the analogous context of the notice requirement of CPL 700.50 (3), that "the relevant initiating event is termination of the warrant and not termination of the eavesdropping" (*People v Bialostok, supra,* at 746). *Bialostok* strongly suggests that the relevant time period is triggered upon attainment of the objective (*see, People v Bialostok, supra,* at 746-747). Accordingly, we conclude that the People's approach would vitiate the requirement of "immediate" sealing (*see,* CPL 700.50 [2]; *cf., People v Washington, supra,* at 123).

■ Even under the People's approach, however, there was an unjustified delay in sealing. However measured, the delay was comparable to those condemned in *Winograd (supra)* and *Gallina (supra).* The tapes were not presented to the court for sealing until shortly after 9:00 A.M. on Wednesday, June 8, between one and two days after the obligation to seal arose (*see, People v Winograd, supra,* at 395; *People v Gallina, supra,* at 60; *see also, People v Mullen,* 152 AD2d 260, 267-268). The People failed to furnish a valid excuse for that delay. According to the hearing evidence, on the morning of June 7th the prosecutor notified the issuing Judge that the tapes would be presented for sealing later that day. The investigator responsible for sealing arrived at his office at 10:45 A.M. that day and spent part of the afternoon preparing the tapes for sealing. Between 4:30 and 5:00 P.M., the investigator met the prosecutor

at the courthouse in order to present the tapes for sealing, only to discover that the Judge had left for the day. The prosecutor and investigator were told by the Judge's staff to return in the morning. They made no attempt to contact the issuing Judge at home, although the Judge was available. Further, they made no effort to contact another Judge although, by local rule, one is always on call to handle such matters.

The actual or assumed unavailability of the court does not excuse a delay in sealing of more than one day (*see, People v Winograd,. supra*, at 394; *People v Gallina, supra*, at 60). Even if the issuing Judge is in fact unavailable, efforts must be made to contact an available Judge (*see, People v Winograd, supra*, at 394-395; *People v Gallina, supra*, at 60).

*People v Vespucci* (75 NY2d 434, *cert denied sub nom. Corrigan v New York*, 498 US 814), relied upon by the People, is distinguishable. There, the prosecutor made advance arrangements with an issuing Judge who stated that he would be available and told the prosecutor when to present the tapes for sealing, a direction precisely complied with by the prosecutor. Thus, the prosecutor made alternative arrangements in advance with court approval (*see, People v Vespucci, supra*, at 441-442; *see also, People v Ronning*, 137 AD2d 43, 47-49, *lv denied* 72 NY2d 866; *cf., People v Winograd, supra*, at 394 [condemning prosecutor for failing to have supervising Justice transfer his authority to an available Justice, despite prosecutor's advance knowledge of supervising Justice's unavailability]).

The unexcused delay in sealing the tapes requires suppression of the Walker and Batchelor intercepts and of the tangible evidence seized pursuant to the warrant issued on June 9, 1994, after the obligation to seal arose.

Accordingly, the judgments of conviction should be reversed, the motions to suppress granted, and the indictment dismissed.

PINE, WISNER, BALIO and FALLON, JJ., concur.

Judgment unanimously reversed, on the law, motions to suppress granted, and indictment dismissed.