**UNITED STATES of America**

v.

**Jesus R. RIVERA, Eleazer Lopez, Richard Sotero, Alexis Flores, Jose Martinez, David Santiago, J.B. Aviles, Clifton A. Jackson, and Miguel Bobe, Defendants.**

No. 98–CR–87E(F).

United States District Court, W.D. New York.

Jan. 28, 1999.

Denise E. O'Donnell, United States Attorney, Thomas S. Duszkiewicz, of counsel, Buffalo, New York, for the Government.

Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Joseph M. LaTona, of counsel, Buffalo, New York, for defendant Rivera [1].

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This matter was referred to the undersigned for all pretrial matters by order of Hon. John T. Elfvin dated July 22, 1998. They are presently before the court on Defendant Rivera's motion (Doc. # 33), filed November 17, 1998, seeking pre-trial discovery. Defendants Martinez, Santiago, and Bobe, by papers filed November 19, 1998 (Doc. # 34), and November 30, 1998 (Doc. # 36) (Doc. # 37), respectively, and all other Co–Defendants orally joined, without objection by the Government, in the motion at oral argument.

### BACKGROUND

The indictment against Defendants Rivera, Lopez, Sotero, Flores, Martinez, Santiago, Aviles, Jackson and Bobe charges violations of 21 U.S.C. §§ 846, 841(a)(1), 843(b), and 18 U.S.C. § 2. Specifically, Defendants are charged with conspiracy to distribute cocaine, distribution of cocaine, and use of a telephone and pager to facilitate the conspiracy and sales of cocaine.

The Indictment results from an investigation by New York state authorities and evidence obtained from wiretap orders issued by a county court judge against two residential telephones and four digital pagers. Government's Response to Defendants' Notice of Motion, filed December 4, 1998 ("Government's Response") (Doc. # 40) at 2 n. 2. Pursuant to voluntary discovery, the Government has provided Defendants with copies of all of the intercept orders, applications, logs also constituting the progress reports, and preliminary transcripts of intercepted conversations. Government's Response at 3.

In the instant motion, Defendants seek disclosure of any forms or models which may have been used by the investigators in preparing the wiretap applications. Defendants also seek progress reports, inspection of equipment used to implement any pen registers or trap and trace devices used by investigators, copies of minimization instructions, information describing surveillance activities related to the investigation, and information regarding use of informants. The Government's Response was filed December 4, 1998; oral argument was conducted December 17, 1998. For the reasons which follow, the motion is DENIED.

### DISCUSSION

As relevant, Fed.R.Crim.P. 16 authorizes discovery of items and documents material to the defense. Excluded from discovery are internal investigative documents. Fed. R.Crim.P 16(a)(1)(C), Fed.R.Crim.P. 16(a)(2). Discovery is material if the information sought is relevant to the case and will lead to the discovery of admissible evidence. *See United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir.1993); *United States v. Tanner*, 279 F.Supp. 457, 469–70 (N.D.Ill.1967). Further, the requested information must have more than an abstract relationship to the issues presented, rather, there must be some indication that the requested discovery will have a significant effect on the defense. *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir.1991); *United States v. Ross*, 511 F.2d 757, 762–63 (5th Cir.1975); *United States v.*

1. As each Co–Defendant has joined in the instant motion they are listed as follows: Eleazer Lopez—Robert M. Goldstein, Esq.; Richard Sotero—Daniel J. Henry, Esq.; Alexis Flores—David Rodriguez, Esq.; Jose Martinez—E. Carey Cantwell, Esq.; David Santiago—John J. Molloy, Esq., Clifton A. Jackson—Keith Bond, Esq.; and Miguel Bobe—Angelo Musitano, Esq.

*Feola,* 651 F.Supp. 1068, 1144 (S.D.N.Y. 1987).

Defendants seek information relating, *inter alia,* to any "forms" or "models" which may have been used to prepare the underlying wiretap applications to establish that, if such occurred, it would demonstrate that the investigative necessity requirement of 18 U.S.C. § 2518(1)(c) ("§ 2518(1)(c)") was not met. Affidavit of Joseph M. LaTona, Esq. In Support of Defendant's Motion ("LaTona Affidavit"), ¶¶ 4, 6. Further, Defendants contend that the requested information relating to surveillance activities and the use of informants may reveal misrepresentations in the applications thereby creating another potential ground for suppression. LaTona Affidavit at 6. Additionally, Defendants seek minimization guidelines and progress reports to support their argument that the investigators failed to properly execute the wire taps. While no specific rationale for inspection of the pen register and trap and trace devices used during the investigation is given by Defendants, the court presumes Defendants believe that such an inspection may establish the equipment was capable of intercepting communications beyond the telephone numbers normally recorded by such equipment thereby raising a further ground for suppression. None of these requests have merit.

## A.  Forms, Models and Boilerplates.

■ First, even assuming that forms, models or "boilerplate," as Defendants use that term, LaTona Affidavit, ¶¶ 4, 6, were used by investigators in this case, such use is irrelevant to whether the application complied with the requirements of § 2518(1)(c). That provision requires an electronic intercept application include "a full and complete statement as to whether or not other investigative procedure have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 28 U.S.C. § 2518(1)(c). An applicant for a wiretap need only "inform the authorizing judicial officer of the nature and progress of the investigation and the difficulties inherent in the use of normal law enforcement methods." *United States v. Miller,* 116 F.3d 641, 663 (2d Cir.1997), *cert. denied,* 524 U.S. 905,

118 S.Ct. 2063, 141 L.Ed.2d 140 (1998). Whether the application meets this requirement is to be determined in a "practical and common sense fashion." *United States v. Torres,* 901 F.2d 205, 231–32 (2d Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). However, applications which make only "generalized and conclusory statements that other investigative procedures would prove unsuccessful," are inadequate and may require suppression. *United States v. Lilla,* 699 F.2d 99, 104 (2d Cir.1983). Should Defendants later move to suppress the fruits of the wiretap in this case on the ground that the application fails to comply with § 2518(1)(c), the issue will therefore be whether the application has adequately explained why normal investigative techniques were not feasible regardless of whether such explanations mirrored similar statements made in connection with past applications.

■ Many drug conspiracies share common elements. For example, such conspiracies frequently involve use of residences located in older urban neighborhoods, limited exposure to surveillance of central figures, secrecy regarding sources of supply, distrust of outsiders such as potential undercover agents, reliance on a small coterie of trusted confederates, and, most importantly, the central use of telephonic communications and paging devices by which much of the conspiracy's business is conducted. Thus, it should not be surprising that in preparing a wiretap application in connection with investigations involving local drug distribution rings like those charged in the instant cases, these common elements result in substantially similar statements to those used in a prior like investigation as to the necessity for a wiretap. Indeed, it is not improbable that many of the facts which qualified in the earlier application, also approved by a judicial officer, to establish the investigatory justification for the wiretap, may even appear identical to the reasons proffered in a future application. Hence, the question for the issuing judicial officer is not whether the statements in support of the necessity for the wiretap may be similar, or even identical, in form to those proffered to the court in a prior investigation, rather, it is whether the statements made in connection with the ap-

plication at hand meet the requirements of the § 2518(1)(c) based on all of the information presented concerning the current investigation. *See United States v. Lilla, supra,* at 104 (affidavit's assertion that facts of investigation as stated justified wiretaps held "contrary to common sense.").

The mere fact that forms, model statements or other so-called boilerplate may have been used successfully in prior wiretap applications does not alone establish that such statements and the specific facts they represent are thus inaccurate. Boilerplate is the daily fare of countless legal transactions, including criminal proceedings; it is unrealistic to argue their presence in connection with wiretap applications is somehow inherently suspect. Even if the applicant were, in the specific application at issue, to acknowledge that the necessity statement used in a prior application had been used verbatim, except as to names, dates and locations, depending on the actual facts of the specific investigation as outlined in the probable cause showing, such "form" statements may well accurately represent the true facts of that investigation. Absent other information suggesting that the applicant did not conduct and accurately detail the steps taken in the investigation up to the time of the application, the employment of "boilerplate" to state the justification for the wiretap, standing alone, is not probative of whether the court is being misled or whether the details thus described are insufficient to meet the requirements of § 2518(1)(c). Indeed, reliance on possible "boilerplate" statements of investigative necessity runs the risk that such statements will be rejected by court as too generalized or implausible. *See, e.g., Lilla, supra,* (statement rejected as "good example of how not to conform to statutory requirements.") The existence of such forms, models or other "boilerplate" even if used in the applications at issue is, accordingly, irrelevant and therefore immaterial to the issue of necessity for the wiretap.

This finding is consistent with decisions by other courts in this circuit. *United States v. Estrada,* 1995 WL 577757 *6 (S.D.N.Y.1995) (fact that wiretap application contained vague, boilerplate statements which tracked language of § 2518(1)(c) requiring government explain why other investigative techniques that were insufficient did not render wiretap invalid as, even if inclusion of such statements was incorrect, application still provided ample basis upon which reviewing judge could find statutory requirement was satisfied), *aff'd sub. nom., United States v. Zapata,* 164 F.3d 620 (2d Cir.1998) (TABLE); *United States v. Restrepo,* 1989 WL 4292, *4 (D.Conn.) ("the inclusion in an affidavit of general or boilerplate statements does not of itself render the affidavit inadequate [under § 2518(1)(c)] .... What matters is that the affidavit indicate why such procedures have not been or are not likely to be adequate in the particular case.") (citing cases), *aff'd,* 884 F.2d 1381 (2d Cir.1989), *cert. denied,* 493 U.S. 1035, 110 S.Ct. 756, 107 L.Ed.2d 772 (1990).

Read closely, the cases submitted by Defendants do not support a contrary finding. Thus, in *United States v. Castillo–Garcia,* 117 F.3d 1179 (10th Cir.1997), the court upheld suppression of two wiretaps not because the underlying applications had relied on "boilerplate," but because the applications while relying on two prior applications, which the court found complied with § 2518(1)(c), failed to state any specific justification for wiretapping the two additional telephones for which permission to wiretap was then sought. *Castillo–Garcia, supra,* at 1194, 1196. In *United States v. Carneiro,* 861 F.2d 1171 (9th Cir.1988), the court affirmed suppression of wiretap evidence because of the presence of material omissions and misstatements in the underlying applications based on the government's concessions that the applicant's assertions regarding the unlikelihood that the defendant's source would visit him and that the investigation had failed to uncover defendant's links to a supplier, as justification for the wiretap, were untrue. *Carneiro, supra,* at 1182. Although two of the conceded misstatements also were predicated on similar statements made in prior applications, testimony at a hearing revealed that no investigation supported the particular statements at issue. *Id.* Therefore, the observation by the court, relied upon by Defendants, LaTona Affidavit, ¶ 6, that the statements were the same as those used in a prior investigation in itself was not the basis for the suppression

finding. Further, the statement in *United States v. Ailemen*, 986 F.Supp. 1228, 1231 (N.D.Cal.1997) does not support Defendants' request. The court's statement that "[b]oilerplate assertions" of investigative necessity are insufficient refers not to the use of such forms but, rather, to assertions of investigative impediments which are too generalized to permit the court to make an independent evaluation of their validity. *Id.* ("The affidavit must contain an 'adequate factual history of the investigation and a description of the criminal enterprise sufficient to enable' the issuing court to determine on its own whether there is the requisite necessity for the wiretap.") (quoting *United States v. Echavarria–Olarte*, 904 F.2d 1391, 1396 (9th Cir.1990)).

Similarly, in *People v. Fonville*, 247 A.D.2d 115, 681 N.Y.S.2d 420 (App.Div. 4th Dep't. 1998), in reversing the trial court's failure to grant defendant's motion to suppress, the court found the "boilerplate allegations of [investigative] necessity were contradicted by factual allegations in the warrant applications, by the officers' averments in opposition to defendants' motions to suppress, and by the officers' testimony at the lengthy ... hearing conducted by the [trial] court." *Fonville, supra*, at 424. Absent such other objective evidence of misstatements or the lack of a particular showing of necessity, the court's opinion does not suggest that any acknowledgment of the use of a form, model or "boilerplate" statement of investigative necessity alone, even if used in a prior application, would require suppression. Nor is there any indication that the court, while strongly disapproving of the use of "template allegations of necessity," intended to hold that such use in itself requires finding the statements insufficient *per se*. To the extent the court intended otherwise or that the court found the *Castillo–Garcia* and *Carneiro* cases "condemn" the use of templates or "boilerplate" in wiretap applications, *Fonville, supra*, at 424, this court would disagree. Finally, *People v. Candella*, 171 A.D.2d 329, 578 N.Y.S.2d 286 (App.Div. 4th Dep't.1991), does not present, contrary to Defendants' assertion, LaTona Affidavit, ¶ 8, any issue of reliance on statements of investigative necessity used in prior applications, and is therefore inapplicable to the issue presented here.

## B. Surveillance, Inspection of Equipment, and Informant Information.

■ Defendants request for access to surveillance and informant information, to the extent such may even exist, seeks internal investigative reports and is therefore excluded from pretrial disclosure. Fed.R.Crim.P. 16(a)(2). Nor do Defendants provide any reason to believe the pen register or trap and trace devices used in the investigation to which they seek access may have contravened Defendants' right to reasonable expectations of privacy under the Fourth Amendment or related statutes such as 18 U.S.C. § 3121, *et seq.* (authorizing pen registers and trap and trace devices).

■ Defendants also request information detailing the actual use of any informants in the underlying investigation. Defendants rely on *United States v. Salemme*, 978 F.Supp. 343 (D.Mass.1997). *Salemme* is, however, inapposite. In *Salemme*, the court discovered information which suggested that some of the submissions to the court in connection with the issuance of eavesdropping orders contained material omissions and false and misleading information regarding the difficulty of obtaining evidence through surveillance and informants. *Salemme, supra,* at 346. Specifically, the court found evidence that certain individuals, whom the government had indicated were the targets of the investigation, may also been acting as government informants. *Id.* at 351 n. 3; 357 n. 9. Based upon this information, the court ordered disclosure of relevant informant information in preparation of hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). *Id.* at 355. It is not necessary to agree or disagree with the court's decision in *Salemme* to find that no threshold showing of the likelihood of material omissions, falsehoods or misleading statements has been made in this case. As discussed, it does not follow that use of forms or models in preparing wiretap applications is indicative that the specific information they contain is false or contains material omissions. Defendants' request, unlike the unusual circumstances presented in *Salemme*, is therefore purely speculative without any support in fact. Accordingly, Defen-

dants have failed to establish these requests seek information material to the defense.

## C. Request for Transcripts, Progress Reports & Minimization Guidelines.

As the Government has provided, without prejudice, preliminary transcripts of intercepted conversations, Defendants' request, is, to that extent, moot. Moreover, as the Government represents no progress reports exist, Defendants' request for such is similarly moot. Defendants' request for any minimization guidelines provided to the investigators must also be denied. The court fails to see how such information is relevant to whether the investigators properly executed the wiretap. Whether proper minimization was followed may be determined from a comparison of the transcripts of the intercepted conversations with the scope of authorization as stated in the wiretap orders. Defendants' request as to such minimization guidelines seeks unnecessary and therefore immaterial information.

### CONCLUSION

Based upon the foregoing, Defendants' motions are DENIED. A scheduling order governing further proceedings in this case is being entered along with this order. SO ORDERED.