THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v SHADI AGHA, HELMI AGHA, and JAMIL FAWZI HASAN, Also Known as "JIMMY," Respondents, et al., Defendant. THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v HELMI AGHA, EYAD ABDALLAH, Also Known as "EDDIE," and JAMIL FAWZI HASAN, Also Known as "JIMMY," Respondents. [829 NYS2d 302]—

Appeals from an order of the Erie County Court (Timothy J. Drury, J.), entered February 6, 2006. The order granted those parts of the omnibus motions of defendants in indictment Nos. 1005-2005 and 1006-2005 seeking suppression of the evidence seized pursuant to seven pen register and trap and trace orders and nine eavesdropping warrants.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously reversed on the law, those parts

of the motions seeking suppression of evidence are denied and the matter is remitted to Erie County Court for further proceedings on the indictments.

Memorandum: The People appeal from an order granting those parts of the omnibus motions seeking suppression of the evidence seized pursuant to seven pen register and trap and trace orders (hereafter, pen register orders) and nine eavesdropping warrants issued by Supreme Court (Wolfgang, J., and Rossetti, J.) (hereafter, issuing court or courts). The Attorney General's Organized Crime Task Force began an investigation of defendant Helmi Agha with respect to his alleged involvement in a conspiracy to commit trademark counterfeiting in the first degree (Penal Law § 165.73). That investigation evolved into an investigation of a marihuana distribution network involving Helmi Agha and the remaining three defendants.

The issuing court granted the application of the People seeking a pen register for Helmi Agha's home and business telephone lines. In their application, the People asserted that they had reasonable suspicion to believe that Helmi Agha may be involved in a conspiracy to distribute "pirated" digital video diskettes (DVDs) based on his sale of two DVDs to a cooperating witness. The People asserted that the DVDs were kept behind the counter of the convenience store owned by Helmi Agha's family, that they were packaged in a bag with the logo of a store in New York City and that Helmi Agha informed the cooperating witness that he would be receiving a shipment soon and that the selection in that shipment would be much better. Furthermore, the People confirmed with a representative of the Motion Picture Association of America that the two movies contained on the DVDs were still first release movies that had not been released on DVD and that the trademarks were counterfeit. According to that representative, DVDs were often made overseas and brought into this country through New York City. Six additional pen register orders were thereafter issued, either amending or extending prior orders. Those orders were based upon information obtained from the records of the initial pen register, together with information that a shipment of 325 counterfeit DVDs arriving from New York City had been intercepted at a bus station in Buffalo. The name on the return address of the intercepted package was spelled only slightly differently from the name of an individual who, according to the pen registers, had several telephone contacts with Helmi Agha.

The issuing court determined that there was probable cause to believe that Helmi Agha and others had committed, were committing or would commit the crimes of criminal possession

of marihuana in the first degree, criminal sale of marihuana in the first degree and conspiracy to commit those crimes (*see* CPL 700.15 [2]), based upon evidence obtained, inter alia, from the records of the pen registers, information received from the FBI that was provided by named informants to the FBI concerning the involvement of Agha and his brother, defendant Shadi Agha, in an alleged network to distribute hydroponic marihuana obtained from Canada, and evidence of recorded conversations between the target of an FBI investigation and Shadi Agha, which recordings had been obtained by the FBI from an authorized wiretap. The issuing court therefore granted the application seeking an eavesdropping warrant for the telephone line at the convenience store and for Helmi Agha's cellular telephone (*see* CPL 700.15), and subsequent applications for amended or extended eavesdropping warrants were granted, including warrants for a pager and cellular telephones subscribed to Shadi Agha, based upon information of suspected illegal activity obtained from the authorized interception of conversations between the Agha brothers and other individuals.

County Court (Drury, J.) (hereafter, suppression court) determined that the People failed to establish the necessary reasonable suspicion that Helmi Agha was involved in a conspiracy to commit trademark counterfeiting in the first degree inasmuch as the People failed to establish that the DVDs containing a counterfeit trademark had a total value in excess of $100,000 (*see* CPL 705.10; Penal Law § 165.73). The suppression court therefore determined that the issuing court erred in granting the first application seeking a pen register order. Because subsequent orders were based upon information obtained as a result of the initial order, the court suppressed all of the evidence obtained as a result of those subsequent orders.

With respect to those parts of defendants' motions to suppress the evidence obtained as a result of the eavesdropping warrants, the suppression court determined that the issuing courts erred in concluding that the People had probable cause to obtain the warrants. The court noted in particular that the People failed to establish that normal investigative procedures had been tried and had failed, or that they "reasonably appear[ed] to be unlikely to succeed if tried" (CPL 700.15 [4]). The suppression court determined that it could not consider any evidence obtained through use of the pen registers, which were improperly issued; it disregarded evidence obtained from the FBI informants as "unreliable"; and, although the court acknowledged the value of evidence obtained through the use of the FBI wiretap, it nevertheless determined that, because the

People failed to arrange a controlled buy of marihuana from the Agha brothers, the People failed to establish that normal investigative procedures had not been successful.

We conclude that the suppression court reviewed the applications for the pen register orders and the eavesdropping warrants in a " 'hypertechnical manner' " rather than in a " 'commonsense and realistic fashion,' " and we note that the court failed to pay " 'proper respect to the decision[s] of the issuing [courts]' " (*People v Tambe*, 71 NY2d 492, 501 [1988]). We conclude that the first pen register application was properly granted because it set forth "specific, articulable facts[ ] warranting the [People's] reasonable suspicion" that Helmi Agha and others unknown at the time were committing the crime of trademark counterfeiting in the first degree and conspiracy to commit that crime (CPL 705.10 [2]). The evidence obtained through the records of the initial pen register supported the subsequent amended and extended orders (*see id.*).

With respect to the eavesdropping warrants, we conclude that they were properly issued upon a showing of probable cause (*see* CPL 700.15). " '[T]he legal conclusion [as to whether probable cause existed] is to be made after considering *all* of the facts and circumstances together.' . . . A synoptic evaluation is essential because '[v]iewed singly, these may not be persuasive, yet when viewed together the puzzle may fit and probable cause [may be] found' " (*People v Shulman*, 6 NY3d 1, 26 [2005], *cert denied* — US —, 126 S Ct 1623 [2006]; *see generally People v Lazo*, 16 AD3d 1153 [2005], *lv denied* 4 NY3d 887 [2005]; *People v Glasgow*, 12 AD3d 1172 [2004], *lv denied* 4 NY3d 763 [2005]). It is axiomatic that "[t]he law does not require that all possible investigative techniques, or any particular investigative technique, be tried, or that electronic surveillance be sought only as a last resort" (*People v Fonville*, 247 AD2d 115, 119 [1998]), and we note that the warrants were sought after several months of extensive investigation (*cf. id.* at 121-123; *People v Candella*, 171 AD2d 329, 332-333 [1991]). We therefore conclude that the suppression court erred in suppressing the evidence seized. Present—Scudder, P.J., Martoche, Centra and Pine, JJ.